# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 30, 2000 Session

## ALFRED TOMPKINS, ET AL. v. ANNIE'S NANNIES, INC., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
No. 89950 T.D.     George H. Brown, Jr., Judge

___

**No. W1999-00372-COA-R3-CV - Filed October 9, 2000**

___

Plaintiffs' nine year old child, Alexandria, while under the direction of her day care center, broke both kneecaps while participating in a downhill race. Plaintiffs sued the day care center on a negligence theory, arguing that the day care center breached their duty of care. The trial court directed a verdict for the day care center, finding that the injuries sustained by the nine year old were not foreseeable, and, thus, no duty of care arose. Additionally, at trial, plaintiffs' counsel made an offer of proof whereby testimony was introduced that two girls fell and bumped heads in a race immediately preceding Alexandria's. The trial court excluded this testimony from the jury. Plaintiffs allege error. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Brian S. Miller and Justin Ross, Memphis, Tennessee, for the appellants, Alfred Tompkins and Jacqueline Tompkins, Individually, Guardians and Next Friends of Alexandria Tompkins, a minor.

Dixie White Ishee, Memphis, Tennessee, for the appellees, Annie's Nannies, Inc., Joyce Tockey, Ann Devos, Alice Hunter, Taressia R. Simpson and Clay Morgan.

## OPINION

On September 10, 1996, nine year old Alexandria Tompkins (Alexandria) was enrolled in the aftercare program at Annie's Nannies, Inc. (Annie's Nannies). Alexandria's aftercare teachers on that day were Taressia Simpson (Ms. Simpson) and Clay Morgan (Mr. Morgan). Ms. Simpson and Mr. Morgan took Alexandria and the other children to Cameron Brown Park. Upon arriving at the park, Ms. Simpson and Mr. Morgan organized races whereby the children were grouped

according to age and gender. The children lined up at the top of a hill leading into the park and, at the word "Go," they ran down the hill to where Mr. Morgan was standing.

Plaintiffs' attorneys made an offer of proof at trial whereby Alexandria testified that she saw two girls fall and bump heads in the race immediately preceding hers and that she told Ms. Simpson that she did not want to run but was told that she had to run.

Alexandria participated in the "nine and up" race. While running in the downhill race, Alexandria felt her knees pop, and she fell backwards. Ms. Simpson picked Alexandria up and carried her to a park bench while Mr. Morgan tried to call the Annie's Nannies office. Alexandria was picked up by her mother shortly after the accident occurred and was taken to the hospital where she was diagnosed as having two broken kneecaps. It was undisputed that Alexandria had no prior problems with her knees.

At trial, the deposition testimony of two orthopedic surgeons was introduced. Dr. E. B. Wilkinson, Jr. testified that Alexandria's knee injuries were rare and were most likely caused by the stress put on the tendons pulling on the kneecaps while Alexandria was running. Dr. Rommel Childress agreed with Dr. Wilkinson that Alexandria's broken kneecaps were an extremely rare injury to get from running. Dr. Childress, however, stated that the downhill nature of the running was a factor in Alexandria's knee fractures because more forces are put on the muscles while running downhill that can literally pull the kneecap apart.

At the close of all proof, counsel for Annie's Nannies moved for a directed verdict. The trial court granted the directed verdict, holding that in order to recover, there must be a legal cause of injury and that the injury must be foreseeable. The trial court found that Alexandria's injuries were not foreseeable in that they did not occur as the result of a fall, but rather occurred while running. Thus, the trial court held that negligence was not proven as a matter of law; hence, there was no factual issue to present to the jury. Plaintiffs' counsel timely filed a notice of appeal, raising the following issues, as we perceive them, for this court's review:

1. Whether the trial court erred in granting a directed verdict in favor of Annie's Nannies and its employees based upon its determination that the defendants could not foresee injury to Alexandria.

2. Whether the trial court erred in excluding testimony that two girls fell and bumped heads while running in a downhill race prior to the race in which Alexandria was injured.

On review of the grant of a directed verdict on motion of a defendant, it is not this court's duty to weigh the evidence. Rather, we must take the strongest legitimate view of the evidence in favor of the plaintiffs, indulging in all reasonable inferences in their favor, and disregarding any evidence to the contrary. The trial court's action may be sustained only where the evidence is uncontradicted and a reasonable mind could draw only one conclusion. *Alexander v. Armentrout*,

24 S.W.3d 267, 271 (Tenn. 2000); **Williams v. Brown**, 860 S.W.2d 854, 857 (Tenn. 1993); **Bowers v. Potts**, 617 S.W.2d 149, 152 (Tenn. Ct. App. 1981).

In order to be successful in a negligence action, the plaintiff must prove the following essential factors of negligence: (1) a duty of care existed which the defendant owed to the plaintiff; (2) the defendant's conduct fell below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss resulted; (4) causation in fact existed; and (5) defendant's act or omission was the proximate or legal cause of the injury. **See Bradshaw v. Daniel**, 854 S.W.2d 865, 869 (Tenn. 1993). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. **Id.** A court should consider the following when determining whether a duty exists:

> [W]hether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others – or, more simply, whether the interest of the plaintiff [who] has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. . . . A decision by the court that, upon any version of the facts, there is no duty must necessarily result in judgment for the defendant.

**Bradshaw**, 854 S.W.2d at 869-70 (quoting **Lindsey v. Miami Dev. Corp.**, 689 S.W.2d 856, 859 (Tenn. 1985)).

Foreseeability is the test of negligence. Everyone has a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to another. **See Doe v. Linder Constr. Co.**, 845 S.W.2d 173, 178 (Tenn. 1992). No person, however, is expected to protect against harm from events which one cannot reasonably anticipate or foresee or which are so unlikely to occur that the risk, although recognizable, would commonly be disregarded. **See W. Page Keeton et al., Prosser and Keeton on the Law of Torts** § 31, at 170 (5th ed. 1984). Specifically, "[t]he defendant, in order to be liable, must have been able to anticipate or reasonably foresee what usually will happen." **Lancaster v. Montesi**, 390 S.W.2d 217, 221 (Tenn. 1965). It logically follows, then, that the scope of the defendant's duty is based upon the foreseeability of the risk of harm involved.

There are two views regarding the extent of a defendant's duty based upon foreseeability. The first view, referred to as the "limitation of liability to risk," is that no defendant is liable for consequences which no reasonable person would expect to follow from the defendant's conduct. **See W. Page Keeton et al., Prosser and Keeton on the Law of Torts** § 43, at 281 (5th ed. 1984). The second view, "liability beyond the risk," is that a negligent defendant must take existing circumstances as he finds them, and he may be liable for consequences occurring as a result of his acts, regardless of whether they could reasonably be anticipated. **See id**. at 290. In Tennessee, liability is imposed upon a defendant when the injury caused could reasonably have been anticipated or foreseen. **See generally Stratton v. United States**, 213 F. Supp. 556, 560 (E.D. Tenn. 1962) ("The general rule in Tennessee is that negligence, to be actionable, must result in damage to the

plaintiff which the defendant could reasonably have anticipated or foreseen.") (citing *Tidwell v. Kay's of Nashville, Inc.*, 250 S.W.2d 75, 77 (Tenn. 1952); *Jones v. Stewart*, 191 S.W.2d 439 (Tenn. 1946); *Moody v. Gulf Refining Co.*, 218 S.W. 817 (Tenn. 1920)). Foreseeability requires an awareness of a general character of injuries similar to those suffered by the plaintiff. *See Lancaster*, 390 S.W.2d at 220. If plaintiff's injuries are of a type that could not have been reasonably foreseen, a duty of care never arises. *See Doe*, 845 S.W.2d at 178.

In the instant case, two orthopedic surgeons testified that Alexandria's knee injuries occurred as a result of her running. Neither doctor testified that her injuries were the result of falling. Although Annie's Nannies owed Alexandria a duty of reasonable care, Annie's Nannies could, in no way, foresee that Alexandria would be injured *while* running. Annie's Nannies may have been liable, if a jury had determined such, if Alexandria's injuries were the result of a fall. For instance, if Alexandria had fallen and had broken her arm or her ankle, a reasonable jury could have determined that Annie's Nannies could have foreseen that such an injury could occur during downhill races, and thus, if negligence was proven, Annie's Nannies would be liable. Although the fact that an accident may be "freakish" in nature does not, per se, make it unpredictable or unforseen, *see City of Elizabethton v. Sluder*, 534 S.W.2d 115 (Tenn. 1976), the failure to take special precaution against a danger that is only remotely possible is not negligence. *See Union Ry. Co. v. Williams*, 187 F.2d 489 (6th Cir. 1951), *cert. denied*, 342 U.S. 839 (1951).

The Tompkins place emphasis on the fact that Ms. Simpson testified that if she had thought about it, she would have felt that it was unsafe to have the children run down the hill. In *Doe*, however, the Tennessee Supreme Court held that "[t]he actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward 'with the wisdom born of the event.' The standard is one of conduct, rather than of consequences. It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred." *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992) (quoting *W. Page Keeton et al., Prosser and Keeton on the Law of Torts* § 31, at 170 (5th ed. 1984)).

On review of this case, we have determined that the evidence in favor of the plaintiff, namely the testimony of Alexandria and the two orthopedic surgeons, suggests that Alexandria's injuries occurred while she was running. No evidence to the contrary was introduced at trial. Based upon this and the foregoing, we find that Alexandria's injuries were too remote to be reasonably foreseeable and, thus, no duty of care arose. We affirm the trial court's directing a verdict in favor of the defendant, Annie's Nannies.

We now turn to the issue that the trial court erred in excluding testimony regarding two girls falling and bumping heads while running in a downhill race prior to the race in which Alexandria was injured. Our review of a trial court's evidentiary rulings is whether the trial court abused its discretion:

In Tennessee admissibility of evidence is within the sound discretion of the trial judge. When arriving at a determination to admit or exclude even that evidence which is considered

relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion.

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992) (citations omitted).

At trial, plaintiffs' counsel made an offer of proof whereby Alexandria testified that she saw two girls fall and bump their heads in a race immediately prior to Alexandria's race. The trial court excluded the jury from hearing this testimony. Counsel for the Tompkins argue on appeal that this testimony was relevant to show that Annie's Nannies had notice or knowledge of danger. The determinative issues in this case, however, are whether it was foreseeable that Alexandria could suffer a general type of injury similar to that which she suffered and whether, based on that foreseeability, a duty was owed. Testimony about two little girls falling and bumping their heads is irrelevant to the determination of whether the injuries sustained by Alexandria were foreseeable. Falling and bumping heads is almost certain to occur when children run and play. Breaking both kneecaps while running is not, and this court fails to see how testimony of one is relevant to the determination of foreseeability of the other. We find that the trial court did not abuse its discretion in refusing to allow such testimony.

Based on the foregoing, we affirm the trial court's granting of a directed verdict in favor of the defendant. The costs of this appeal are taxed to the Tompkins and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE