IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 24, 2002 Session

## GUY R. JENKINS, ET AL. v. DAN GIBBS

**Appeal from the Chancery Court for Knox County**
**No. 142261-3      Sharon Bell, Chancellor**

**FILED SEPTEMBER 5, 2002**

**No. E2001-01802-COA-R3-CV**

After a dispute arose over the ownership of 1000 shares of stock in City Bonding Company ("City Bonding"), Guy Jenkins and Aubrey Allen Jenkins ("Plaintiffs") sued Dan Gibbs ("Defendant") seeking a determination as to how many shares of stock were owned by the various parties. Guy Jenkins also claimed Gibbs unlawfully procured the breach of a contract Guy Jenkins had with City Bonding. The Trial Court granted Gibbs summary judgment on the unlawful procurement of breach of contract claim. After a trial on the remaining issues, the Trial Court determined Gibbs owned 490 shares of stock, Guy Jenkins owned 255 shares, and the remaining 255 shares were unissued. All parties appealed the Trial Court's determination with respect to ownership of the stock. Guy Jenkins also appealed the granting of summary judgment on his claim against Gibbs for unlawful procurement of breach of contract. We vacate the summary judgment granted to Gibbs and affirm the judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery
Court Vacated in Part and Affirmed in Part; Case Remanded**.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and JAMES CURWOOD WITT, JR., SP. J., joined.

James S. MacDonald, Knoxville, Tennessee, for the Appellants Guy R. Jenkins and Aubrey Allen Jenkins.

John A. Lucas, Knoxville, Tennessee, for the Appellee Dan Gibbs.

# OPINION

## Background

Plaintiffs filed this lawsuit seeking corporate records and other documents pertaining to City Bonding which were in Gibbs' control. Plaintiffs further claimed there was a dispute as to the ownership of the 1000 shares of stock in City Bonding and sought a declaratory judgment asking the Trial Court to declare the ownership interests of the respective parties. The Trial Court dismissed the portion of the complaint seeking production of corporate records for failure to comply with statutory requirements. An Amended Complaint was filed seeking essentially the same relief as well as setting forth a cause of action against Gibbs based on Guy Jenkins' claim that he had a contract with City Bonding for compensation in the amount of $1,139.24 per month and this contractual obligation was breached. Guy Jenkins claimed this was an unlawful procurement of breach of contract by Gibbs in violation of Tenn. Code Ann. § 47-50-109, thereby entitling him to treble damages.

Gibbs filed a motion for summary judgment on the procurement of breach of contract claim. Gibbs asserted that on June 8, 1999, City Bonding adopted a resolution terminating the monthly payments it was making on behalf of Guy Jenkins. The parties submitted affidavits and deposition testimony setting forth their version of the facts on this issue. The Trial Court granted Gibb's motion for summary judgment on the procurement of breach of contract claim, leaving for trial the primary issue of the ownership interests of the respective parties in City Bonding.

At trial, the parties stipulated City Bonding was formed in 1982 and 1000 shares of stock were issued at that time, of which Frank Harper received 600 shares. The remaining 400 shares were issued to Joe Jenkins or to Joe Jenkins and Aubrey Jenkins jointly.[1] In January of 1984, the stock certificates were turned in and the stock was reissued with Joe Jenkins receiving 490 shares, Guy Jenkins receiving 255 shares, and John Pollock receiving 255 shares. This is where any agreement between the parties ends.

Gibbs testified that in 1985, Guy Jenkins gave him 250 shares of stock in City Bonding, although no stock certificate was ever given to Gibbs and there is no documentation verifying this gift actually took place or that it was completed. Gibbs further claims he purchased 490 shares of stock from Joe Jenkins for $13,500.00 on January 3, 1986. Gibbs identified the cancelled check dated January 3, 1986, for $13,500, and also identified a notation on the check which stated "for four hundred and ninety shares of City Bonding Company." Since purchasing the stock, Gibbs has served as general manager of City Bonding taking care of the day-to-day operations. He began making a salary of approximately eight hundred dollars per week sometime after this stock purchase. After purchasing the 490 shares, Gibbs received advances on his salary from City Bonding in order to pay off money he borrowed in order to purchase the stock. Gibbs claims Guy Jenkins was

---

[1] There is a dispute as to whether Aubrey Allen Jenkins received any stock. Aubrey Allen Jenkins was a minor at all relevant times and there is further dispute over whether any stock he may have received was effectively transferred.

aware of this arrangement for paying off the money Gibbs borrowed. Gibbs never heard anyone claim Aubrey Allen Jenkins owned any shares of stock, and he is not aware of any corporate records reflecting any ownership interest on behalf of Aubrey Allen Jenkins. The first time Gibbs heard anyone claim Aubrey Allen Jenkins owned any stock was in 1999, and he heard this from Guy Jenkins' attorney.

Part of the day-to-day operations of City Bonding involved preparing semi-annual financial statements on behalf of the shareholders and filing these statements and appearance bonds with various courts in the counties in which City Bonding conducted business. Gibbs testified the documents filed with the Knox County Criminal Court since 1986 show Guy Jenkins owning 750 shares of stock and Gibbs owning the remaining 250 shares. According to Gibbs, Guy Jenkins had very little to do with the day-to-day operations of City Bonding. Gibbs stated when these financial statements were first prepared, his ownership interest was limited to the 250 shares that had been given to him and they were accurate. These same figures were just copied and used on later financial statements even though he had purchased the additional 490 shares.

Gibbs testified City Bonding paid approximately $1,500 per month on a personal note of Guy Jenkins. This payment continued to be made by City Bonding up until the time the present lawsuit was filed. Gibbs stated in addition to the $1,500 per month, Guy Jenkins also received cash at various times and City Bonding paid the majority of the payments on a Mercedes owned by Guy Jenkins. None of the payments made to Guy Jenkins or to Gibbs were corporate stock dividends. Throughout City Bonding's history, the company compensated officers and employees by paying some of their bank debts.

Attorney Jerome Templeton ("Templeton") testified by way of deposition. Templeton had nothing to do with the formation of City Bonding or the original issuance of stock. He became involved with City Bonding when it was being acquired by Guy Jenkins. When asked if he had occasion to inform himself about who owned how much stock, Templeton responded his recollection was vague but after looking at his files he did have "something to do with that." Templeton went on to add he really did not have any independent recollection of most of the matters involved with the corporation. During his initial representation of City Bonding, Templeton received a letter and other information from Norman Williams ("Williams"), the attorney who represented City Bonding at the time of incorporation. Based on the information contained in this letter, Templeton made numerous handwritten notes at that time. There was a lengthy argument at trial over whether Williams' letter and Templeton's handwritten notes based on the letter constituted hearsay. Plaintiffs' counsel argued it was a business record and fell within the applicable hearsay exception. Defendants' counsel disagreed for several reasons, one being Templeton's handwritten notes were made well after the events described in the letter took place (i.e., when the stock was originally issued), and, therefore, were not made at or near the time of the event. Defendant's counsel claimed Templeton had no personal knowledge of the events described in Williams' letter because he was not even involved in the corporate matters at that time. The Trial Court concluded this evidence was hearsay and did not constitute a business record.

Templeton also was questioned about notes he made at a meeting in January of 1986 when stock apparently was received by Guy Jenkins. Templeton stated the stock was either given to Guy Jenkins or he paid for it. Templeton then added: "I don't know about that. . . . I can't recall that, I don't know that I knew at the time." The Trial Court again ruled this was inadmissible hearsay, and that it did not qualify under the past recollection recorded exception because Templeton never knew about the subject matter to begin with.[2] Templeton testified the stock composition in 1984 was Joe Jenkins 490 shares, Guy Jenkins 255 shares, and John Pollock 255 shares. Templeton later attempted to testify regarding his handwritten notes setting forth the stock composition in later years. When asked where these figures came from or why he was writing them down, Templeton responded "I do not know." He went on to add he did not know whether "it's something that was done or whether it was something that I thought should be done." Templeton then pointed out he had no independent recollection at all on that matter. Some of this testimony was likewise excluded.

Guy Jenkins testified it was after this lawsuit was filed before he first learned Gibbs claimed to have purchased 490 shares of stock from Joe Jenkins. Guy Jenkins denied ever giving approval for Gibbs to use borrowed corporate funds to repay a personal loan he made in order to purchase the stock. Guy Jenkins was approached by his father to oversee City Bonding, and agreed to assist only if he (i.e. Guy Jenkins) had "full control." According to Guy Jenkins, when the stock was initially issued Frank Harper had 600 shares, and Joe and Aubrey Allen Jenkins jointly controlled the other 400 shares. In 1984, all of the stock was reissued with 255 shares being owned by Guy Jenkins, 255 shares being owned by John Pollock, and 490 shares being owned by Joe Jenkins. John Pollock then turned in his stock and the 255 shares became treasury shares. Guy Jenkins did not know his brother, Joe Jenkins, sold his 490 shares to Gibbs and has no personal knowledge about that alleged transaction. According to Guy Jenkins, in January of 1986, all the stock owners essentially turned in their stock and it was once again reissued with the new stock composition being: Guy Jenkins owning 550 shares, Gibbs owning 250 shares, and Aubrey Allen Jenkins owning 200 shares. Guy Jenkins testified he gave Gibbs these 250 shares of stock.

The deposition of Aubrey Allen Jenkins was offered into evidence at trial. Aubrey Allen Jenkins was 19 years old at the time of his deposition. He first learned he supposedly was a stockholder in City Bonding from his uncle, Guy Jenkins. He learned this about a year before his deposition took place "but that was scratchy". He heard more about his supposed stock ownership in the two months prior to his deposition. Aubrey Allen Jenkins testified he had no personal knowledge about whether or not he actually owned any stock in City Bonding, and he has never seen a stock certificate evidencing his ownership of stock.

Joe Jenkins also testified via deposition. Joe Jenkins is the brother of Guy Jenkins and father of Aubrey Allen Jenkins. According to Joe Jenkins, in 1984 he owned 490 shares of stock, Guy Jenkins owned 255 shares, and John Pollock owned the remaining 255 shares. Joe Jenkins does not recall his son Aubrey ever being a shareholder in City Bonding. Joe Jenkins stated he never put

---

[2] Other objections to certain testimony and the admissibility of exhibits were made on the same basis and were likewise ruled inadmissible hearsay by the Trial Court for the reasons set forth above.

any stock in his son's name and never saw a certificate of stock showing Aubrey as an owner. Joe Jenkins claimed the first time he ever heard anything about his son Aubrey owning any stock was "[a]fter all this lawsuit started." Joe Jenkins acknowledged he sold his 490 shares of stock to Dan Gibbs for $13,500.00.

John Walker ("Walker") was called as an expert witness. Walker is a licensed attorney in Knoxville. Walker testified to his experience as an attorney handling corporate law matters. Walker testified the corporate records of City Bonding were "substantially incomplete," but he reviewed what records were available including the corporate minute book, stock certificates, and other records. He also reviewed the depositions of Gibbs and the various members of the Jenkins family. Walker testified the reconstructed stock transfer ledger prepared by counsel for Gibbs showing what Gibbs believed to be the stock ownership was reconstructed in a manner consistent with generally accepted corporate law principles and procedures. Walker also stated he questioned whether Aubrey Allen Jenkins ever had any interest in the stock. Walker based this conclusion primarily upon the depositions of Aubrey Allen Jenkins and Joe Jenkins. Walker went on to add even if Aubrey Allen Jenkins did own stock, it was conveyed away by his father Joe Jenkins who had "full power and right to transfer the interest of his son in those shares."

After a trial, the Trial Court issued its opinion as to the respective ownership interests of the parties. After hearing further argument, the Trial Court issued a Supplemental Opinion revising some of its initial findings. In the Supplemental Opinion, the Trial Court found as follows:

(1) Phase one represents the ownership of six hundred (600) shares by Mr. Harper, and four hundred shares ownership between Joe Jenkins and Aubrey Allen Jenkins as of September, 1983.

(2) Phase two is the reissue to Joe Jenkins of four hundred ninety (490) shares, to Guy Jenkins of two hundred, fifty-five (255) shares, and to John Pollock of two hundred, fifty-five (255) shares in January, 1984.

(3) Respectfully, the Court cannot find by a preponderance of the evidence that any of the issuance of shares in phase two came from any particular stock, just that it came from the pool of stock from phase one.

(4) The Court cannot, despite its earlier finding, determine that the shares of the then minor, Aubrey Allen Jenkins, were conveyed away from him without authority, and cannot place a constructive trust on the shares in phase two.

The reasons for this finding are that the theory of constructive trust was not plead nor argued, and even if it had been,

there is no evidence that the defendant had any knowledge of an adverse claim.

(5) Joe Jenkins sold his four hundred, ninety (490) shares to the defendant in January, 1986, thereby vesting ownership in said stock in defendant.

(6) As to the two hundred, fifty shares purportedly transferred to the defendant by Guy Jenkins in approximately January, 1986, the Court finds that the transfer was intended as a gift, but that the gift failed for want of delivery, so that Guy Jenkins remained owner of those shares.

(7) The remaining two hundred, fifty-five shares signed over to the corporation by John Pollock have not been reissued, so that they are found to be unissued treasury shares.

Plaintiffs and Gibbs appeal the Trial Court's determination with regard to the respective ownership interests of the parties in City Bonding. Plaintiffs also appeal the exclusion of various portions of Templeton's deposition. Plaintiff Guy Jenkins appeals the granting of summary judgment to Gibbs on his procurement of breach of contract claim.

### Discussion

First, we will discuss Guy Jenkins' appeal of the granting of summary judgment on his claim against Gibbs for procurement of breach of contract. The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion

satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

Gibbs denied the existence of any contract with Guy Jenkins entitling him to monthly payments. In his affidavit, Gibbs stated: "*After Mr. Jenkins filed this suit against me*, I consulted with my counsel regarding whether the Company was obligated to continue making monthly loan payments … on behalf of Mr. Jenkins." (emphasis added). Based on this discussion, Gibbs concluded Guy Jenkins would only be entitled to receive dividends if any were paid. Since no dividends were ever paid, he could discontinue the payments. He also was informed corporate employees could receive salaries, but since Guy Jenkins was not an employee, he was not entitled

to the payments as a salary either. Therefore, "the Company elected [pursuant to a corporate resolution] to terminate the monthly payments to Home Federal Bank that the Company had been making on Mr. Jenkins' behalf." According to Gibbs, he was acting on behalf of the corporation when terminating these payments, and he is, therefore, entitled to immunity.

Guy Jenkins testified he has received $1,000.00 per month "in lieu of salary, director fees, consultant fees, committee fees, dividends or other forms of corporate remuneration" since early 1986. This amount was later increased to $1,500.00 per month. While Guy Jenkins acknowledged there was no written contract, he claimed "at all times there existed an oral contract between himself and the corporation … said contract between the Affiant and the corporation was negotiated directly with Gibbs, … Gibbs confirmed this contract between Guy R. Jenkins and CBI directly to a Mr. Wes Goddard at Home Federal Bank some two to three years ago.…" According to Guy Jenkins, he received these payments until Gibbs unilaterally, arbitrarily, and maliciously terminated them in June of 1999.

Although the Trial Court granted summary judgment on the claim for procurement of breach of contract, the Trial Court, unfortunately, did not set forth its reason as to why summary judgment was appropriate. Thus, we do not know whether the Trial Court: (1) determined there was no contract between City Bonding and Guy Jenkins; (2) determined there was a contract but there was no breach; or (3) determined there was a contract and a breach, but Gibbs negated an essential element of the claim or was immune.

We believe the affidavits of Guy Jenkins and Gibbs create a genuine issue of material fact regarding whether there was a contract between City Bonding and Guy Jenkins for the payment of $1,500.00 per month. Guy Jenkins testified he was entitled to these payments not just because of his ownership interest in City Bonding but also because he was liable for several million dollars on various bonds. Gibbs argues on appeal that these two situations do not, by themselves, legally entitle Guy Jenkins to monthly payments, and we agree. This, however, does not mean an oral contract was not voluntarily entered into to compensate him for his ownership or potential liability on the bonds. In a nutshell, we believe the testimony set forth above creates a genuine issue of material fact regarding whether there was an oral contract between Guy Jenkins and City Bonding.

Even if there was a contract, Gibbs still would be entitled to summary judgment if the undisputed material facts demonstrate that there was no breach, or that Gibbs negated an essential element of the claim, or that Gibbs has a defense to the claim, such as his claim of immunity. On appeal, we cannot determine if there was a breach of contract without knowing what the terms of that contract, if one exists, are, a factual determination not made by the Trial Court. Therefore, we cannot affirm the granting of summary judgment unless the undisputed material facts demonstrate that Gibbs negated an essential element of the procurement of breach of contract claim or established he is entitled to immunity.

Gibbs bases his claim to immunity on language found in *Forrester v. Stockstill*, 869 S.W.2d 328 (Tenn. 1994). In *Forrester*, our Supreme Court quoted with approval the following

from Thomas G. Fischer, Annotation, *Liability of Corporate Director, Officer, or Employee for Tortious Interference with Corporation's Contract with Another,* 72 A.L.R.4th 492, 501 (1989):

> Some courts have recognized that generally a corporate director, officer, or employee is not liable for tortiously interfering with a corporate contract, because he is considered a party to the contract, as long as he is acting to serve the corporate interests, or unless his activity involves individual separate tortious acts. Courts have also recognized, however, that a corporate director, officer, or employee may be liable for tortiously interfering with a corporate contract if he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests.

*Forrester*, 869 S.W.2d at 333. The *Forrester* Court noted a claim for wrongful interference with an employment contract by a third person was actionable only if that person stood as a third party to the employment relationship. *Id*. at 331. The Court in *Forrester* later added:

> A corporation can act only upon the advice of its officers and agents, and its officers and directors have a duty to serve the corporation. Important societal interests are served by corporations having the clear and candid advice of their officers and agents. Fear of personal liability would tend to limit such advice. Consequently, when an officer, director, or employee of a corporation acts within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation, in claims of intentional interference with employment, the action of the officer, director, or employee is considered to be the action of the corporation and is entitled to the same immunity from liability.

*Id.* at 334-35. Although the present case does not involve a claim for interference with an employment contract, we believe *Forrester* is nevertheless applicable because the "societal interests" discussed in *Forrester* apply with equal force regardless of whether the underlying claim is for interference with an employment contact or procurement of breach of a non-employment contract. In the present case, we believe Gibbs is immune from liability on the procurement of breach of contract claim if he acted within the general range of his authority and his actions were substantially motivated by an intent to further the interest of the City Bonding. *Forrester*, 869 S.W.2d at 334-35. In his affidavit, Gibbs candidly acknowledged he met with his attorney to determine if the payments could be stopped only "[a]fter Mr. Jenkins filed this suit against me." In our opinion, a genuine issue of material fact exists as to whether Gibbs was substantially motivated by an intent to further the interest of City Bonding or whether he was substantially motivated to serve his own interest by retaliating against Guy Jenkins for filing this lawsuit.

In light of the foregoing, we vacate the grant of summary judgment to Gibbs on the claim for procurement of breach of contract and remand this claim for further proceedings consistent with this opinion. In so doing, we express no opinion on whether there actually was a contract between City Bonding and Guy Jenkins and, if so, what its terms were or if it was breached. We also express no opinion on whether Gibbs unlawfully procured a breach of contract, if one exists, or whether Gibbs is entitled to immunity. We hold only that summary judgment on this claim on the record before us was inappropriate for the reasons set forth above.

With regard to the remaining issues on appeal, the factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Next, we address the Trial Court's exclusion of portions of Templeton's deposition and accompanying exhibits as hearsay. Plaintiffs argue Templeton had personal knowledge of the matters which were excluded or they were admissible through one of the various exceptions to the hearsay rule.

Admissibility of evidence is within the sound discretion of the trial judge. "When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." *Tompkins v. Annie's Nannies, Inc.*, 59 S.W.3d 669, 674-675 (Tenn. Ct. App. 2000)(quoting *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). Templeton's recollection as to the events he testified to was extremely vague, at best. He admitted either being unable to recall numerous matters or not having any knowledge of the events when they took place. During the course of the trial, the Trial Court carefully listened to both sides when ruling on the admissibility of this evidence. After reviewing the entire deposition of Templeton, we are unable to conclude the Trial Court erred when it made the various rulings excluding portions of Templeton's testimony. We, therefore, affirm the evidentiary rulings of the Trial Court regarding the exclusion of portions of Templeton's testimony.

Plaintiffs also argue Defendant waived the right to object to the admissibility of the excluded portions of Templeton's testimony. Prior to the deposition, the parties stipulated "[a]ll objections except as to the form of the questions are reserved to on or before the hearing." Plaintiffs claim because Defendant did not object during the deposition, the objections were waived. We addressed a very similar issue recently in *Perry v. Winn-Dixie Stores, Inc.*, No. E-2001-00523-COA-R3-CV, 2002 Tenn. App. LEXIS 160 (Tenn. Ct. App. Feb. 28, 2002)(no Rule 11 app. for perm. to appeal filed). *Perry* involved a virtually identical stipulation, and we concluded the Trial Court properly concluded an objection made at trial regarding improper foundation was not to the "form of the question." We went on to add:

To accept Plaintiff's argument would require us to completely ignore the express stipulation the parties made at the deposition. This we will not do. Stipulations are agreements between counsel regarding business before the court which are entered into mutually and voluntarily between the parties. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999). While parties may not stipulate to questions of law, they may stipulate "within the range of possibly true facts and valid legal strategies ...." *Id.* On appeal, stipulations are binding on the parties and may not be altered. *Id.* at 702 (citing *Bearman v. Camatsos*, 215 Tenn. 231, 236, 385 S.W.2d 91, 93 (1964); *First Southern Trust Co. v. Sowell*, 683 S.W.2d 680, 681 (Tenn. Ct. App. 1984)). The stipulation entered into between the parties involved a valid legal strategy and is the type of stipulation allowed under the law. It is, therefore, binding upon the parties. We hold that the stipulation permitted Defendant to make an objection at trial regarding whether a proper foundation had been laid …. Plaintiff cannot use the Rules of Civil Procedure as a shield to ward off an objection which he expressly stipulated was reserved for trial.

*Perry*, 2002 Tenn. App. LEXIS 160 at * 17-18. We believe the same result is merited in the present case. Defendant's various objections to the testimony of Templeton were not merely objections to the form of the question. We conclude Defendant did not waive his right to object to this testimony as hearsay, or any other basis which did not involve simply an objection based on the form of the question.

Plaintiff's main argument on appeal attacks the Trial Court's determination of the respective ownership interests of the parties. Plaintiffs claim the Trial Court erred when it concluded Gibbs owned 490 shares of stock and further erred when it held Aubrey Allen Jenkins was not the owner of 200 shares. The conclusions reached by the Trial Court on these issues by necessity centered around credibility determinations. In resolving the factual issues presented for appeal, we must keep in mind the Trial Court heard the conflicting testimony from the witnesses regarding their claimed ownership interest in City Bonding. "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The trial court's determinations regarding credibility, as to those witnesses who testified live, are accorded considerable deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "'[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

We cannot say the preponderance of the evidence weighs against the Trial Court's finding that Gibbs purchased 490 shares of stock from Joe Jenkins. Given the testimony of Gibbs that he purchased 490 shares, the testimony of Joe Jenkins that he sold Gibbs 490 shares, as well as

the cancelled check evidencing same, we cannot conclude there was any reversible error with regard to the Trial Court's conclusion that Gibbs owned 490 shares of stock. Likewise, the preponderance of the evidence does not weigh against the Trial Court's conclusion that Pollock's 255 shares remain unissued treasury shares given Pollock's testimony he turned his stock back in to the corporation and the disputed evidence concerning what, if anything, happened to this stock thereafter.

Plaintiffs further argue the Trial Court erred when it failed to establish a constructive trust on behalf of Aubrey Allen Jenkins for the 200 shares of stock he supposedly held in 1982. We believe the issue of whether Aubrey Allen Jenkins actually held any stock and whether a constructive trust should be imposed also are factually driven. The Trial Court apparently believed Aubrey Allen Jenkins at one point did own 200 shares, notwithstanding Aubrey Allen Jenkins' own testimony that he never knew he owned any stock. Having concluded he did own 200 shares at one time, the issue then became whether a constructive trust should be imposed. Plaintiffs rely on the following language found in *Gibson's Suits in Chancery*, § 383 **Cases of Constructive Trust** (7th ed. 1988):

> **§ 383.  Cases of Constructive Trusts.** – Constructive trusts are so called because they are *constructed* by the Courts of Equity in order to satisfy the demands of justice, without reference to any presumable intention of the parties. They include cases: (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; or (2) where title to property is obtained by fraud, duress, or other inequitable means; or (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; or, (4) where a person acquires property with notice that another is entitled to its benefits. In all such cases, Equity, for the purpose of doing justice in the most efficient manner, constructs a trust out of the transaction, and makes a trustee of the person thus acquiring the title.…

While the facts certainly are in dispute about whether Aubrey Allen Jenkins ever owned any stock in City Bonding, the Trial Court apparently concluded that he did and that his father, Joe Jenkins, possessed the authority to sell this stock. The preponderance of the evidence does not weigh against this conclusion. Joe Jenkins testified he sold his 490 shares of stock to Dan Gibbs. Gibbs testified he purchased the 490 shares from Joe Jenkins. The cancelled check for this purchase was admitted into evidence. Both Gibbs and Joe Jenkins testified they were not aware Aubrey Allen Jenkins ever owned any stock. Aubrey Allen Jenkins himself testified he was not aware he owned any stock until shortly before his deposition and many years after the fact. Guy Jenkins is the only party who testified Aubrey Allen Jenkins ever owned any stock, and he testified at least at one point this stock was "jointly" owned by Joe Jenkins and Aubrey Allen Jenkins. The evidence in the record certainly supports the Trial Court's conclusion there was a valid sale of stock between Gibbs and Joe Jenkins as well as the Trial Court's conclusion that Gibbs and Joe Jenkins were unaware of any potential adverse claim to the stock that was sold. There was no testimony that

Joe Jenkins or Gibbs knew about any potential ownership of stock by Aubrey Allen Jenkins. None of the four situations for establishing a constructive trust apply in this case since there is no evidence that Gibbs violated any duty, exercised fraud, took advantage of any relationship, or otherwise engaged in any inappropriate conduct when purchasing this stock. Accordingly, we conclude the Trial Court did not commit reversible error when it declined to establish a constructive trust on behalf of Aubrey Allen Jenkins for the 200 shares of stock. In light of this holding, we pretermit the issue of whether the Trial Court erred when it refused to establish a constructive trust because this was not properly plead at trial.

On appeal, Gibbs argues not only is he entitled to the 490 shares of stock he purchased from Joe Jenkins, but he also claims entitlement to the additional 250 shares which Guy Jenkins admits to "giving" him prior to the purchase of the 490 shares. Given the fact Guy Jenkins actually possessed much less stock than he thought he did, it certainly is doubtful whether he intended to make a gift to Gibbs of stock he might not have possessed to begin with. Nevertheless, Gibbs admitted no stock certificate was ever issued to him documenting this gift and there was no documentary evidence verifying he ever received this gift. The formal requirements of a gift are "the intention by the donor to make a present gift coupled with the delivery of the subject of the gift by which complete dominion and control of the property is surrendered by the donor." *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1996). Regardless of what the parties may have intended to do with these 250 shares, the facts certainly do not preponderate against the Trial Court's conclusion this supposed gift of 250 shares to Gibbs failed for lack of delivery.[3] Accordingly, we affirm the Trial Court's conclusion on this issue as well.

The only remaining issue is Plaintiffs' claim the Trial Court improperly included certain documents in the record on appeal. Since we have disposed of the issues on appeal without relying on these documents, this issue is moot.

### Conclusion

We vacate the decision of the Trial Court granting summary judgment to Gibbs on Guy Jenkins' claim that Gibbs unlawfully procured a breach of contract. The rest of the judgment of the Trial Court is affirmed in all other respects. This case is remanded to the Trial Court for further proceedings as necessary consistent with this opinion. Costs of appeal are taxed one-half to the Appellants Guy R. Jenkins and Aubrey Allen Jenkins, and their surety, and one-half to the Appellee Dan Gibbs.

_____
D. MICHAEL SWINEY

---

[3] We believe the same could be said for the 200 shares of stock Guy Jenkins claims to have "given" Aubrey Allen Jenkins.