# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### May 4, 2011 Session

## JANICE DAVIS BOELTER and RICHARD DAVIS v. JACKIE CURTUS REAGAN, ET AL.

### Direct Appeal from the Chancery Court for Wilson County
### No. 09-145    C. K. Smith, Chancellor

### No. M2010-01354-COA-R3-CV - Filed May 18, 2011

Decedent executed a will in 1988 which could not be found upon her death. Decedent's step-children sought to establish a copy of the 1988 will as Decedent's last will and testament, but the trial court found that they had failed to rebut the presumption that the will had been destroyed and revoked. We find that Appellants failed to prove that Decedent did not revoke her will. Accordingly, we affirm the trial court's involuntary dismissal of Appellants' claim as well as its order that Decedent's Estate be administered as an intestate estate.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Michael R. Jennings, Lebanon, Tennessee, for the appellants, Janice Davis Boelter and Richard Davis

Brody N. Kane, Angel P. Kane, Lebanon, Tennessee, for the appellee, Jackie Curtus Reagan

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

Thomas and Erma Davis (now "Mrs. Reagan") married in 1988.  That same year, Mrs. Reagan executed a will leaving her property to Mr. Davis, but if he failed to survive her, then one-half to her surviving siblings and one-half to Mr. Davis' children.[1]  Attorney Michael R. Jennings was nominated as executor.

Mr. Davis died on October 26, 1988, and Mrs. Reagan married Appellee Jackie Curtus Reagan ("Mr. Reagan") in 1994.  She died on December 4, 2007.  In January 2008, Mr. Reagan filed a "Petition for Administration of Estate and Granting of Letters of Administration," claiming to be the sole residuary beneficiary of Mrs. Reagan's estate because despite his "diligent search," no will had been found.  After learning of Mr. Reagan's petition, attorney Jennings retrieved a *copy* of Mrs. Reagan's 1988 will from his files and brought it to the probate court's attention.  Mr. Davis' children, Appellants Janice Davis Boelter and Richard Davis, then filed a complaint in the probate court seeking to establish the 1988 copy as Mrs. Reagan's Last Will and Testament.  Following a hearing, the probate court found that because the original will was not found upon her death, it was presumed to have been destroyed and revoked.  Appellants, the probate court found, had failed to rebut such presumption, and therefore, it ordered that her Estate be administered as an intestate estate.  Appellants  appealed to the chancery court, but it likewise found that Appellants had failed to "provide any proof at all" to overcome the presumption that Mrs. Reagan's will had been destroyed in order to revoke it.  Appellants subsequently appealed to this Court.

## II.  ISSUES PRESENTED

Appellants present the following issues for review:

1.     Did the trial court err in directing a verdict for the Appellees;

2.     Did the trial court err in failing to admit the Last Will and Testament of Erma Mae Reagan to probate;

---

[1]Mrs. Reagan's 1988 will, upon Mr. Davis' predeceasing her, bequeaths one-half of her property to "my husband's children," rather than to "Mr. Davis'" children.  No issue is raised as to those properly included in this class.

3.      Did the trial court err in finding that the Estate shall continue to be administered as an intestate estate for administration purposes by Jackie Curtus Reagan; and

4.      Did the trial court err in its rulings on the admission of evidence by excluding the tape marked as Exhibit 2 for identification only and the testimony of the Appellee about the real estate listed on the Inheritance Tax Return.

For the following reasons, we affirm the decision of the chancery court.

## III.   DISCUSSION

### A.  Motion for Directed Verdict v. Motion for Involuntary Dismissal

This case was tried by the trial judge without a jury, and at the conclusion of Appellants' proof, the trial court, upon Mr. Reagan's request, granted a motion for directed verdict. Appellants argue on appeal that this was procedurally incorrect, and therefore, that the chancery court's decision must be reversed and the case remanded for a new trial.

"[M]otions for directed verdicts have no place in bench trials, while Tenn. R. Civ. P. 41.02(2) motions [for involuntary dismissal] have no place in jury trials." *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citing *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 135 n.1 (Tenn. 2001); *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn. Ct. App. 1985)). The two motions serve different purposes and require different analyses. *Id.*

"A Tenn. R. Civ. P. 50 motion for directed verdict provides a vehicle for deciding questions of law." *Burton*, 29 S.W.3d at 520. The trial judge does not weigh the evidence or assess witness credibility. *Id.* (citing *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000)). Instead, he reviews the evidence in the light most favorable to the non-moving party in order to determine whether sufficient evidence has been presented to create an issue of fact for the jury to decide. *Id.* (citing *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Addaman v. Lanford*, 46 S.W.3d 199, 203 (Tenn. Ct. App. 2000); *Spann v. Abraham*, 36 S.W.3d 452, 462 (Tenn. Ct. App. 1999); *Ingram v. Earthman*, 993 S.W.2d 611, 626 (Tenn. Ct. App. 1998)). "A jury issue has been created if there is any doubt regarding the conclusions to be drawn from the evidence . . . or if reasonable persons could draw different conclusions from the evidence." *Id.* (citations omitted). However, where reasonable minds could reach only one conclusion, no jury issue is raised. *Id.* (citing *Eaton v. McLain,* 891 S.W.2d 587, 590 (Tenn. 1994); *Tompkins v. Annie's Nannies, Inc.,* 59 S.W.3d 669, 673

(Tenn. Ct. App. 2000)).

Motions for involuntary dismissal, however, "challenge the sufficiency of the plaintiff's proof." *Id.* (citing *Smith v. Inman Realty Co.,* 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992); *Merriman v. Smith,* 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979)). A dismissal pursuant to Tenn. R. Civ. P. 41.02(2) is appropriate if, "based on the law and the evidence, the plaintiff has failed to demonstrate a right to the relief it is seeking." *Id.* (citing *City of Columbia,* 557 S.W.2d at 740). Motions for involuntary dismissal require less certainty than do motions for directed verdict. *Id.* (citing *Smith,* 846 S.W.2d at 822). In deciding a Rule 41.02(2) motion to dismiss, the trial court "need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence." *Morris v. Morris,* No. 02A01-9610-CH-00236, 1997 WL 703379, at *3 (Tenn. Ct. App. Nov. 12, 1997) (citing *Thompson v. Adcox,* 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001)).

This case was a nonjury trial in which Mr. Reagan moved the trial court to direct a verdict in his favor at the close of Appellants' proof. Procedurally, this was an inappropriate motion. The appropriate motion was one pursuant to Tennessee Rule of Civil Procedure 41.02(2), a motion for involuntary dismissal. However, Appellees contend that the trial court, in essence, ruled on a motion to dismiss, and we agree. The trial court's order demonstrates that Appellants' claim was dismissed for insufficient proof–Appellants failed to provide "any proof" to rebut the presumption that the 1988 will was destroyed and thereby revoked. Because the trial court properly analyzed Appellees' motion as one for involuntary dismissal, we refuse to elevate form over substance, and therefore reject Appellants' argument that the decision must be reversed on this basis.

In reviewing a trial court's disposition of a motion for involuntary dismissal, our scope of review is pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Burton,* 129 S.W.3d at 521. Tennessee Rule of Appellate Procedure 13(d) requires appellate courts to defer to a trial court's findings of fact. *Boote v. Shivers,* 198 S.W.3d 732, 740 (Tenn. Ct. App. 2005) (citing *Fell v. Rambo* 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000); *Taylor v. Trans Aero Corp.,* 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995)). Thus, an appellate court must "leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true." *Id.* (citing *Estate of Haynes v. Braden,* 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Id.* This Court must give great weight to the trial court's assessment of the evidence as it is in a better position to evaluate witness credibility. *Id.* (citing *Thompson,* 63 S.W.3d at 787).

-4-

The trial court's conclusions of law are reviewed de novo with no presumption of correctness. ***S. Constructors, Inc. v. Loudon County Bd. of Educ.,*** 58 S.W.3d 706, 710 (Tenn. 2001) (citing *Daron v. Dep't of Corr.,* 44 S.W.3d 478, 480 (Tenn. 2001); *Johnson v. Johnson,* 37 S.W.3d 892, 894 (Tenn. 2001)).

## B. *Disposition of Involuntary Dismissal*

Having determined that the trial court granted an involuntary dismissal of Appellants' claims, we must determine whether such dismissal was appropriate.

"[T]he fact that a will cannot be found after a due and proper search raises a presumption that the testator himself destroyed the will." ***In re Estate of West***, 729 S.W.2d 676, 678 (Tenn. Ct. App. 1987) (citing *Shrum v. Powell*, 604 S.W.2d 869 (Tenn. Ct. App. 1980)*; Haven v. Wrinkle*, 195 S.W.2d 787 (Tenn. Ct. App. 1945)). To establish that a will was not intentionally destroyed, the proponent of a lost will must show "(1) the fact that the will was executed in accordance with the forms of law, (2) the substance or contents of the will, and (3) that the will has not been revoked, and that it is lost or destroyed or cannot be found after a due and proper search." ***Id.*** (citing *Morris v. Swaney*, 54 Tenn. 591 (1872); *Sanders v. McClanahan*, 442 S.W.2d 664 (Tenn. Ct. App. 1969)). Each element must be proven by "'the clearest and most stringent evidence,' or by 'clear, cogent and convincing proof.'" ***In re Estate of Cockrill***, No. M2010-00663-COA-R3-CV, 2010 WL 4939950, at *3 (Tenn. Ct. App. Dec. 2, 2010) *perm. app. denied* (Tenn. Mar. 15, 2011) (quoting *Sanders*, 442 S.W.2d at 667).

The parties do not dispute that the first two elements have been met. However, Mr. Reagan contends, and the trial court found, that Appellants failed to prove that Mrs. Reagan did not revoke her 1988 will. Appellants claim that this finding was error based upon the testimony presented at trial.

According to statements made by Attorney Jennings, Mr. Davis and Mrs. Reagan executed similar wills in 1988, leaving everything to the surviving spouse, but if the other did not survive, then one-half to Mrs. Reagan's siblings and one-half to Mr. Davis' children. After Mr. Davis' death in 1988, Appellants unsuccessfully contested Mr. Davis' will. According to Appellant Richard Davis, he spoke with Mrs. Reagan shortly after Mr. Davis' death and Mrs. Reagan stated that "that's the way your father wanted it, . . . after I'm dead, you and your sister[, Appellant Janice Davis Boelter,] get your part then." Mr. Davis testified that based upon this conversation he believed that he would "inherit from her will[.]" However, both Appellants acknowledged that they had not spoken with Mrs. Reagan in over a decade prior to her death, and that other than the copy of the 1988 will, they had no proof that Mrs. Reagan wanted any portion of her estate to pass to them.

Appellants also heavily rely upon the testimony of Mrs. Reagan's sister, Linda Stembridge-Smith, who described a conversation with Mrs. Reagan approximately two months prior to her death. Ms. Stembridge-Smith asked Mrs. Reagan, "have you got everything fixed like you want it?" Mrs. Reagan replied, "I've got it all fixed like I want it." From that statement, Ms. Stembridge-Smith "figured that [Mrs. Reagan] had her wills and stuff fixed the way that she wanted it, because [she] was with [Mrs. Reagan] and Tom Davis when they fixed the [1988] wills. And that's the way I figured that she had left it." She conceded, however, that she had not seen the 1988 will since its execution.

Appellants also called Mr. Reagan to testify. He stated that Mrs. Reagan told him that she had destroyed the 1988 will, although he did not witness its destruction, and that an attorney had advised her that she did not need to execute a new will as everything "would automatically revert down to [him.]" He further testified that Mrs. Reagan had told him where she kept her important papers, and that after her death he found deeds and other court documents there, but despite a "diligent search," found no will. He claimed that during their marriage, Mrs. Reagan had no contact with Appellants, and that "[s]he indicated to [him] she didn't want [Appellants] to get nothing, 'cause they had spent their inheritance on lawyer's fees when they contested their daddy's will."[2]

We find that these statements do not prove that Mrs. Reagan's 1988 will was not revoked, and therefore, we cannot find that a prima facie case of a lost will has been established. Mrs. Reagan's alleged statement that Appellant Mr. Davis would "get [his] part" upon her death was made prior to her marriage to Mr. Reagan and more than a decade prior to her death. Moreover, her alleged statement that she had everything "fixed like [she] want[ed] it" could imply that she intended the 1988 will to remain in effect, but it could just as easily describe her satisfaction with having destroyed the will such that Mr. Reagan would be the sole beneficiary of her estate. We agree with the trial court that the testimony elicited at trial simply fails to prove that Mrs. Reagan did not revoke her will. Accordingly, we affirm the trial court's involuntary dismissal of Appellants' claim as well as its order that Decedent's Estate be administered as an intestate estate.

## C. *Exclusion of Evidence*

Finally, we address Appellants' arguments that the trial court improperly excluded evidence. At trial, Appellants attempted to introduce a taped answering machine message, which they alleged was left by Mr. Reagan to Appellant Richard Davis "saying we don't

---

[2]The trial court specifically found that "Ms. Reagan and her step-children, Janice Davis Boelter and Richard Davis[,] lacked a loving relationship and in fact the proof was that they had a strained relationship."

need to go to court. We don't need to go into this." Appellee objected for lack of a foundation: the caller apparently did not state his name, Appellant Davis testified that he "just assume[d] that it was Mr. Reagan [who left the message]" as he "didn't really know his voice[,]" and Mr. Reagan testified that he did not leave the message. The trial court excluded the tape, finding it irrelevant. However, Appellants contend that "an inference could be drawn from that tape that Jackie Curtus Reagan was worried about what could happen if this matter proceeded to trial."

The trial court also excluded, as irrelevant, proof regarding four parcels of real estate listed on Mrs. Reagan's Inheritance Tax Return. Appellants argue that "[t]he value of these properties, and the fact that one burned, are very relevant to show who has the most to lose by the Court admitting the copy of the Last Will and Testament of [Mrs. Reagan] to probate."

"[T]he admissibility of evidence is within the sound discretion of the trial court." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). A trial court's decision to admit or exclude evidence will be overturned only where an abuse of discretion is found. *Id.* (citing *Otis*, 850 S.W.2d at 442). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Because we agree that the audiotape and the real estate information are irrelevant to the issue of the will's revocation, we find that the trial court did not abuse its discretion in excluding such.

## IV.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellants, Janice Davis Boelter and Richard Davis, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.