# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 25, 2005 Session Heard at Cookeville[1]

## GARY L. WEST, ET AL.  v.  EAST TENNESSEE PIONEER OIL CO. d/b/a EXXON CONVENIENCE STORE

**Appeal by permission from the Court of Appeals, Eastern Section**
**Circuit Court for Knox County**
**No. 2-390-01     Hon. Harold Wimberly, Judge**

---

**No. E2002-03039-SC-R11-CV - Filed August 18, 2005**

---

We granted review in this case to determine whether convenience store employees owe a duty of reasonable care to persons on the roadways when the employees sell gasoline to an obviously intoxicated driver and/or assist the driver in pumping the gasoline into his vehicle.  We answer in the affirmative.  The plaintiffs in this case were injured when their vehicle was struck by another vehicle driven by an intoxicated driver.  The intoxicated driver had purchased gasoline at the defendant convenience store shortly before the accident.  The plaintiffs filed suit alleging the defendant was liable for their injuries based on theories of negligence, negligence per se, and negligent entrustment in furnishing the driver with gasoline.  The trial court granted summary judgment in favor of the defendants on all claims.  The Court of Appeals affirmed the dismissal of the negligence per se and negligent entrustment claims, but reversed the grant of summary judgment on the negligence claim.  The intermediate court held that the defendant's employees were under a duty to act with due care when undertaking the affirmative acts of  selling the gasoline to the visibly intoxicated driver and then helping the driver pump the gasoline into his vehicle.  After a careful review of the record and relevant authority, we affirm the judgment of the Court of Appeals in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals is Affirmed in Part and Reversed in Part and Case is Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ., joined.

Gregory F. Coleman and Michael A. Myers, Knoxville, Tennessee, for the appellants, Gary L. West and Michell B. Richardson.

---

[1] Oral argument was heard in this case on May 25, 2005, in Cookeville, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) program.

Clint J. Woodfin and Gary T. Dupler, Knoxville, Tennessee, for the appellee, East Tennessee Pioneer Oil Co. d/b/a/ Exxon Convenience Store.

**OPINION**

**Factual Background**

The defendant East Tennessee Pioneer Oil Company operates an Exxon convenience store on U.S. Highway 11W, also known as Rutledge Pike, in Knox County, Tennessee. The store consists of three connected portions – a convenience market and gas station, an ice cream counter, and a "Huddle House" restaurant – each owned and operated by the defendant.

On July 22, 2000, Brian Tarver ("Tarver") entered the convenience store. Tarver had been drinking alcohol, and the plaintiffs allege that upon entering the store he was obviously intoxicated. There was a large number of customers in the store at the time, with a long line of people waiting at the check-out counter. Tarver pushed his way to the front of the line and asked the clerk if she would "go get [him] some beer." The clerk, Dorothy Thomas ("Thomas"), stated in her deposition that Tarver smelled of beer and staggered as he walked. Thomas refused to sell him beer because, in her opinion, Tarver was intoxicated. After being denied beer, Tarver began cursing loudly, talking to Thomas in a threatening manner, and generally causing a disturbance inside the store. Tarver then managed to pull three crumpled one dollar bills out of his pocket and laid them on the counter. He told Thomas, "we need gas" and then turned to leave. A customer opened the door for Tarver, who staggered out of the store and back toward the gas pump where his car was parked.

A few moments later an alarm began "beeping" inside the store, alerting Thomas that someone was attempting to activate the gasoline pumps outside. After the "beeping" continued, Thomas concluded that a customer was having difficulty with the pump. Although the evidence conflicts on this point, Thomas testified that she could not see the pump,[2] so she asked the other employees in the store if someone would "go see who doesn't know what they're doing at the gas pump." Two off-duty employees were at the store: Candice Drinnon ("Drinnon"), who worked at both the Huddle House restaurant and the ice cream counter, and Roy Armani ("Armani"),[3] who worked in the Huddle House portion of the defendant's store.

The accounts also differ as to how the events next unfolded. Thomas testified that both Drinnon and Armani were inside the store during this episode, and they went to assist the customer at the pumps at Thomas's request. Drinnon, on the other hand, testified that she and Armani were standing outside on the parking lot when they first saw Tarver and noticed he was having difficulty

---

[2] Deposition testimony by another employee, Candice Drinnon, indicated that the pump, and anyone operating the pump, were readily visible from inside the store.

[3] The record reflects a dispute as to the correct identity of this person. The parties have submitted no deposition or affidavit from this employee, and his surname has been given as both "Armani" and "Anrani" by the other employees.

operating the pump. According to Drinnon, she and Armani walked over to assist Tarver without being asked to do so by Thomas or anyone else.

In any event, Drinnon and Armani came to the aid of the intoxicated Tarver, who could not push the correct button to activate the pump. Drinnon testified that upon approaching Tarver she could tell he had been drinking because she "could smell it on him." Drinnon also states, however, that she and Armani were not fully aware of the degree of Tarver's intoxication until after activating the pump. According to Drinnon, Tarver spoke normally, but, "when we seen him walk away, [we] could tell he was drunk." Drinnon pushed the correct button on the pump and then Thomas, the clerk behind the counter, activated the pump from inside the store which allowed the pump to operate. Tarver then apparently proceeded to operate the nozzle himself, obtaining the gasoline without any further assistance.

Tarver pumped three dollars worth of gasoline, got back into his vehicle, and prepared to leave. Drinnon and Armani watched as Tarver, without turning on his vehicle's headlights, drove off the parking lot and into the wrong lane of traffic on Rutledge Pike, traveling southbound in the northbound lane. Drinnon then went back into the store and informed Thomas, the clerk, that Tarver had gotten three dollars worth of gasoline and then driven away on the wrong side of the road. Thomas stated that this was her first indication that Tarver was driving; prior to this point she believed Tarver had been accompanied by another person and was not driving a vehicle himself.

At about the same time as Tarver was traveling south with no headlights on and in the wrong lane of traffic, the plaintiffs' vehicle was traveling north on Rutledge Pike, several miles in front of Tarver. One of the plaintiffs, Gary West, was driving while the other plaintiff, Michell Richardson, was a passenger. Tarver managed to travel 2.8 miles from the convenience store before striking the plaintiffs' vehicle head-on. Both of the plaintiffs sustained serious injuries in the accident.[4]

During their ensuing investigation, the plaintiffs requested Dr. Jeffrey H. Hodgson, a mechanical engineering professor at the University of Tennessee, to examine the fuel tank of Tarver's vehicle. Based upon the results of his examination, Dr. Hodgson determined that at the time Tarver stopped at the defendant's store his vehicle contained only enough fuel to travel another 1.82 miles. Therefore, without the three dollars worth of gas he obtained at the store, Tarver would have "run out" of gasoline approximately one mile before reaching the accident scene.

On June 1, 2001, the plaintiffs filed suit alleging that the defendant's employees were negligent in selling gasoline to the visibly intoxicated Tarver and assisting him in pumping it into his vehicle. The plaintiffs contended it was reasonably foreseeable that these actions would result in an automobile accident. The complaint also alleged the employees were negligent per se, based upon statutory violations related to aiding an intoxicated driver. In addition, the complaint charged that furnishing gasoline to an intoxicated driver constituted negligent entrustment.

---

[4] It is unclear from the record whether these events led to criminal charges against Tarver.

The defendant filed a motion for summary judgment asserting that each of the plaintiffs' claims failed as a matter of law. Specifically, the defendant contended that it owed no duty of care to the plaintiffs while furnishing gasoline to Tarver and that its employees' actions were not a proximate cause of the accident. The defendant also argued that the tort of negligent entrustment was limited to situations involving a bailment and could not be applied to an outright sale of merchandise from a merchant to a customer. As to the negligence per se claims, the defendant contended that the criminal statutes cited by the plaintiffs were inapplicable to the present case.

Following a hearing on the motion, the trial court entered an order granting summary judgment in favor of the defendant on all three claims. The trial stated orally that "Plaintiffs' claim for relief is not recognizable under the law as it stands right now." Upon appeal, the Court of Appeals affirmed the grant of summary judgment as to the negligence per se and negligent entrustment theories of liability, but reversed the trial court on the negligence claim. The intermediate court held, *inter alia*, that "the affirmative acts of Defendant's employees in both selling gasoline to and in helping a visibly intoxicated Tarver pump the gasoline into his vehicle created a duty to act with due care."

We granted review.

**Standard of Review**

Summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000); Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing a motion for summary judgment, we construe the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the non-moving party. Mooney v. Sneed, 30 S.W.3d 304, 305-06 (Tenn. 2000). A party is entitled to summary judgment only when "the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion. . . ." Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 91 (Tenn. 1999). We review this question of law de novo, with no presumption of correctness accompanying the trial court's ruling. Mooney, 30 S.W.3d at 306.

**Analysis**

*I. Negligence Principles*

A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.

Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998) *overruled on other grounds by* Cross v. City of Memphis, 20 S.W.3d 643 (Tenn. 2000); see also McCall v. Wilder, 913 S.W.2d 150, 153

-4-

(Tenn. 1995); McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn. 1991). While we will discuss each of these elements in turn, our primary focus is on the first element: duty of care.

## II. Duty

Although not a part of the early English common law, the concept of duty has become an essential element in all negligence claims. McCall, 913 S.W.2d at 153; Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993); see also W. Page Keeton, Prosser & Keeton on the Law of Torts § 53 (5th ed. 1984). The duty owed to the plaintiffs by the defendant is in all cases that of reasonable care under all of the circumstances. Doe v. Linder Const. Co., 845 S.W.2d 173, 177 (Tenn. 1992). Whether the defendant owed the plaintiffs a duty of care is a question of law to be determined by the court. Burroughs v. Magee, 118 S.W.3d 323, 327 (Tenn. 2003); Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89; Coln, 966 S.W.2d at 39.

If a defendant fails to exercise reasonable care under the circumstances, then he or she has breached his or her duty to the plaintiffs. The term reasonable care must be given meaning in relation to the circumstances. Linder Const. Co., 845 S.W.2d at 178; McCormick v. Waters, 594 S.W.2d 385, 387 (Tenn. 1980). Reasonable care is to be determined by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury. Linder Const. Co., 845 S.W.2d at 178. Thus, legal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. Burroughs, 118 S.W.3d at 329; Staples, 15 S.W.3d at 89; McCall, 913 S.W.2d at 153; see also Keeton, *supra*, § 53.

The risk involved must be one which is foreseeable; "a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." Linder Const. Co., 845 S.W.2d at 178. "The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury." Tedder v. Raskin, 728 S.W.2d 343, 348 (Tenn. Ct. App. 1987)

We employ a balancing approach to assess whether the risk to the plaintiff is unreasonable and thus gives rise to a duty to act with due care. Burroughs, 118 S.W.3d at 329; Staples, 15 S.W.3d at 89. This Court has held that a risk is unreasonable, "'if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.'" Burroughs, 118 S.W.3d at 329 (quoting McCall, 913 S.W.2d at 153).

The defendant argues that it owed no duty of care to the plaintiffs because the intoxicated driver was merely a customer at the defendant's convenience store; thus there was no "special relationship" giving rise to a duty on the part of the defendant to control the actions of the customer. See, e.g., Nichols v. Atnip, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992) (discussing how a defendant

who assumes a special relationship with a third party may also incur a duty to control the conduct of that third party). In our view, the defendant misconstrues the plaintiffs' claims as being based upon a "special relationship" arising from the sale of gasoline to Mr. Tarver (the intoxicated driver). The plaintiffs' allegations do not revolve around any duty of the defendant to control the conduct of a customer. Instead, the claims are predicated on the defendant's employees' affirmative acts in contributing to the creation of a foreseeable and unreasonable risk of harm, i.e., providing mobility to a drunk driver which he otherwise would not have had, thus creating a risk to persons on the roadways. Viewed in this light, the balancing test set out above is appropriate to determine whether the defendant owed the plaintiffs a duty.

Simply stated, the defendant convenience store owed a duty to act with reasonable care under all the circumstances. Under the facts of this case, we conclude that the acts of the defendant in selling gasoline to an obviously intoxicated driver and/or assisting an obviously intoxicated driver in pumping gasoline into his vehicle created a foreseeable risk to persons on the roadways, including the plaintiffs. It is common knowledge that drunk driving directly results in accidents, injuries, and deaths.[5] As to the possible magnitude of the potential harm posed to the plaintiff, we again need look no further than to the frequency and severity of injuries caused by drunken driving. As we noted in Burroughs:

> Deaths and serious injuries tragically occur every day as the result of impaired drivers who are operating motor vehicles on our roads and highways. In addition to the devastation such accidents can wreak on individuals and families, our society also incurs substantial costs (both human and economic) as a result of impaired drivers.

118 S.W.3d at 332.

We next examine the feasability of alternative, safer conduct and the burdens associated with such alternative conduct. A safer alternative was readily available and easily feasible–simply refusing to sell gasoline to an obviously intoxicated driver. The clerk at the defendant's store had already refused to sell beer to Mr. Tarver. In fact, both state law[6] and store policy required her to refuse to sell alcohol to intoxicated persons. It was also the clerk's understanding that she was never required to allow a customer to purchase any item, including gasoline. The relative usefulness and safety of this alternative conduct is obvious. All reasonable persons recognize that refraining from selling gasoline to or assisting intoxicated persons in pumping it into their vehicles will lead to safer roadways.

---

[5] The severity of the risk posed by drunken driving in this state is clearly indicated in Tennessee Department of Safety statistics which reveal that alcohol related automobile accidents led to 2,498 deaths in Tennessee between 1998 and 2003. Dep't of Safety Internet – DUI Statistics: Known Alcohol Related Crashes, available at http://www.tennessee.gov/safety/duistats.htm (last visited July 6, 2005).

[6] See Tenn. Code Ann. § 57-3-406(c) (1999) (providing that "[n]o retailer shall sell any alcoholic beverages to any person who is drunk").

Based upon the foregoing analysis, we conclude that a convenience store employee owes a duty of reasonable care to persons on the roadways, including the plaintiffs, not to sell gasoline to a person whom the employee knows (or reasonably ought to know) to be intoxicated and to be the driver of the motor vehicle. Similarly, a convenience store employee also owes a duty of reasonable care not to assist in providing gasoline (in this case pumping the gasoline) to a person whom the employee knows (or reasonably ought to know) to be intoxicated and to be the driver of the motor vehicle. We stress that because "[f]oreseeability is the test of negligence," Linder Const. Co., 845 S.W.2d at 178, the convenience store employee must know that the individual is intoxicated and that the individual is the driver of the vehicle before a duty arises. It is a question of fact for a jury as to what the employee knew with respect to the individual's intoxication and status as driver. We also hasten to point out, as did the Court of Appeals, that by our decision today we do not hold that convenience store employees have a duty to physically restrain or otherwise prevent intoxicated persons from driving.

### III. *Breach of Duty, Injury or Loss, Cause in Fact, and Proximate Cause*

Our conclusion that the defendant owed a duty to the plaintiffs does not completely resolve this case. The plaintiffs at trial still bear the burden of proving the remaining elements of negligence: breach of duty, injury or loss, cause in fact, and proximate cause. Although we have viewed the facts in the light most favorable to the plaintiffs for purposes of resolving this appeal, the record reflects genuine issues of material fact concerning each of these elements which the jury must resolve.

For instance, the jury must determine whether, in consideration of all the facts and circumstances presented, the employees failed to exercise due care resulting in a breach of their duty of care. See McCall, 913 S.W.2d at 153. Another question of fact for the jury is whether the employees' actions can be attributed to the defendant, thus making the defendant vicariously liable for the employees' alleged negligence. See White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 723-25 (Tenn. 2000) (discussing vicarious liability of employers and agency law). Furthermore, the plaintiffs must show that the defendant's employees' acts were the cause in fact of their injuries. While the affidavit from Dr. Hodgson provides probative evidence on this point, the credibility of the witness, the weight given to his testimony and whether this evidence establishes cause in fact are all issues for the jury.

The final element the plaintiffs must prove is proximate cause. While cause in fact establishes that the plaintiffs' injury would not have occurred "but for" the defendant's conduct, proximate cause focuses on whether the law will extend responsibility for that conduct. Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993). This Court has previously set out a three-prong test for proximate cause:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably

been foreseen or anticipated by a person of ordinary intelligence and prudence.

Haynes v. Hamilton County, 883 S.W.2d 606, 612 (Tenn. 1994) (quoting McClenahan, 806 S.W.2d at 775).

The defendant argues that its employees' actions were not the proximate cause of the plaintiffs' injuries; rather, the injuries were caused solely by the actions of Mr. Tarver. The defendant asserts that its connection to the accident is so tenuous that proximate cause simply does not apply. We note however, "[t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." McClenahan, 806 S.W.2d at 775. Viewing the evidence in the light most favorable to the plaintiffs, we conclude that a reasonable jury could find the acts of the convenience store employees were a substantial factor in bringing about the plaintiffs' accident and that this result was foreseeable. We further conclude there is no rule of law or policy that should relieve the defendant from liability. Accordingly, whether the defendant's employees' acts proximately caused the plaintiffs' injuries is a question for the jury.

## IV. Negligent Entrustment Claims

In addition to their general negligence claim, the plaintiffs have also alleged that furnishing gasoline to an obviously intoxicated driver constituted negligent entrustment. The plaintiffs claim that when the defendant's employees sold gasoline to Tarver it was clearly foreseeable that the fuel would be used in a manner placing others, including the plaintiffs, in danger. The defendant argued in the trial court that a negligent entrustment claim was inapplicable to the facts because the term "entrustment" does not encompass a sale of merchandise from a merchant to a customer. The trial court granted summary judgment in favor of the defendant. The Court of Appeals affirmed, holding that in order to establish a claim of negligent entrustment the entrustor must retain a right of ownership or control over the chattel.

Tennessee courts have long recognized the tort of negligent entrustment. See, e.g., V.L. Nicholson Constr. Co. v. Lane, 150 S.W.2d 1069, 1070 (Tenn. 1941) (negligent entrustment of a vehicle). To prevail on such a claim "requires proof that a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another." Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 907 (Tenn. 1996) (citing Restatement (Second) of Torts § 390 (1964)); see also Ali v. Fisher, 145 S.W.3d 557, 562 (Tenn. 2004). The Restatement explains negligent entrustment as follows:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965).

The Court of Appeals relied upon Brown v. Harkleroad, 287 S.W.2d 92 (Tenn. Ct. App. 1955) in concluding that a supplier of a chattel who relinquishes all ownership rights, such as the present defendant, cannot be liable for negligent entrustment. Harkleroad involved a father who purchased a vehicle for his son. Id. at 94. Several months after receiving the vehicle, the son was involved in an accident and subsequently found guilty of reckless and drunken driving. Id. A party injured in the accident alleged the father had negligently entrusted the vehicle because, at the time of the purchase, the father knew his son was a habitually drunk and reckless driver. Id. at 93. The jury found in favor of the plaintiff. Id. However, upon review, the Court of Appeals concluded that the father could not be held liable because he had relinquished all rights of ownership or control by furnishing the vehicle as a gift, rather than as a loan. Id. at 96. The court was concerned that to hold otherwise could unreasonably extend potential liability.

> If a father incurs liability by giving an automobile to his son, knowing him to be [a] drunken or incompetent driver, when would it end? Would it last for the life of the automobile? Would it apply to a new automobile in the event of a trade-in? Or would liability attach to a dealer who sold an automobile to a known incompetent or drunken driver? Or to a filling station operator who sold such a person gas, knowing of his propensity?

Id.

The Harkleroad decision has been severely criticized. One leading legal commentator stated that Harkleroad and similar decisions "look definitely wrong," and further explained that "[i]t is the negligent entrusting which creates the unreasonable risk; and this is none the less when the goods are conveyed." Keeton, *supra*, § 104. In Nichols v. Atnip, 844 S.W.2d 655 (Tenn. Ct. App. 1992), the Court of Appeals offered that Harkleroad was "contrary to Restatement (Second) of Torts § 390 (1964) and has been criticized by many courts and legal scholars." Id. at 660 (citations omitted). Extensive criticism of Harkleroad was also noted in Brown v. Wal-Mart Stores, Inc., 976 F. Supp. 729, 734 (W.D. Tenn. 1997), in which the court addressed whether a seller of ammunition could be liable for negligent entrustment. Citing the Restatement (Second) of Torts section 390, the court concluded that "among those who may be liable as 'suppliers' [in negligent entrustment actions] are sellers of chattels." Id. Consequently, the court in Brown held that the plaintiff had stated a legitimate cause of action under Tennessee common law. Id. at 735.

The Restatement (Second) of Torts specifically provides that sellers may be liable for negligent entrustment. Restatement (Second) of Torts § 390 cmt. a. (1965) (stating that the rule under this section "applies to anyone who supplies a chattel," including, "sellers, lessors, donors or lenders"). In line with a majority of other states, this Court has previously cited section 390 with approval in defining negligent entrustment. See Ali, 145 S.W.3d at 562; Woodson, 916 S.W.2d at

907.[7] We are also aware of a number of courts having expressly held that sellers of merchandise may be found liable for a negligent entrustment. Morin v. Moore, 309 F.3d 316, 324-25 (5th Cir. 2002); Ireland v. Jefferson County Sheriff's Dep't, 193 F. Supp. 2d 1201, 1229 (D. Colo. 2002); Brown, 976 F. Supp. at 734-35; Flieger v. Barcia, 674 P.2d 299, 301 (Alaska 1983); Jacoves v. United Merch. Corp., 11 Cal. Rptr. 2d 468, 485 (1992); Kitchen v. K-Mart Corp., 697 So. 2d 1200, 1208 (Fla. 1997); Vince v. Wilson, 561 A.2d 103, 104 (Vt. 1989); Bernethy v. Walt Failor's, Inc., 653 P.2d 280, 283 (Wash. 1982). The Tennessee Court of Appeals has recently noted that while negligent entrustment claims typically involve a bailment, "it is now widely agreed that the merchants may be considered to be suppliers of chattels." Rains v. Bend of the River, 124 S.W.3d 580, 597 (Tenn. Ct. App. 2003) (concluding that Tennessee law would support a negligent entrustment claim against a seller of ammunition).

We agree with those decisions cited above. Cases to the contrary, such as Harkleroad, appear to misconstrue the basic premise underlying negligent entrustment by confusing it with the theory of vicarious liability. See, e.g., Broadwater v. Dorsey, 688 A.2d 436, 441 (Md. 1997) (holding that "without the right to permit or prohibit the use of the chattel at the time of the accident, an individual cannot be liable for negligent entrustment"). This Court has recognized that negligent entrustment and vicarious liability are separate and distinct concepts. Ali, 145 S.W.3d at 564. Liability for negligent entrustment is founded upon the supplier's direct negligence in entrusting the chattel to an incompetent user. Vicarious liability, on the other hand, relies upon the supplier's right to control the chattel at the time the entrustee misuses it. See id. at 562-63; Mathis v. Stacy, 606 S.W.2d 290, 292 (Tenn. Ct. App. 1980); see also Keeton, *supra*, § 104. A negligent entrustment is committed at the moment when control of a chattel is relinquished by an entrustor to an incompetent user. Ali, 145 S.W.3d at 564 (citing Harper v. Churn, 83 S.W.3d 142, 146 (Tenn. Ct. App. 2001)). Control therefore need only exist at the time of the entrustment for a prima facie case of negligent entrustment.

Based upon the foregoing, and construing the record in the light most favorable to the plaintiffs, we conclude that the plaintiffs have established a prima facie claim of negligent entrustment. However the plaintiffs' still bear the same burden at trial whether pursuing their theory of negligence or negligent entrustment. Both claims arise from the same facts, entail the same duty, and present the same factual issues to be resolved at trial regarding breach of duty, loss or injury, cause in fact, and proximate cause. We hold that a claim of negligent entrustment is applicable to this case and, therefore, the trial court erred in granting summary judgment in favor of the defendant. The

[7] At least thirty-one other states have utilized section 390 of the Restatement (Second) of Torts in defining a negligent entrustment cause of action. See, e.g., Keller v. Kiedinger, 389 So. 2d 129, 132 (Ala. 1980); Peterson v. Halsted, 829 P.2d 373, 377 (Colo. 1992); Kitchen v. K-Mart Corp., 697 So. 2d 1200, 1207 (Fla. 1997); King v. Petefish, 541 N.E.2d 847, 852 (Ill. App. Ct. 1989); Broadwater v. Dorsey, 688 A.2d 436, 439 (Md. 1997); Axelson v. Williamson, 324 N.W.2d 241, 243-44 (Minn. 1982); Evans v. Allen Auto Rental & Truck Leasing Co., 555 S.W.2d 325, 326 (Mo. 1977); Collette v. Clausen, 667 N.W.2d 617, 621 (N.D. 2003); Vince v. Wilson, 561 A.2d 103, 105 (Vt. 1989); Stehlik v. Rhoads, 645 N.W.2d 889, 895 (Wis. 2002); Moore v. Kiljander, 604 P.2d 204, 206 (Wyo. 1979).

judgment of the Court of Appeals on this issue is reversed.[8]

## Conclusion

In summary, we hold that the convenience store employees owed a duty of reasonable care to persons on the roadways, including the plaintiffs, when selling gasoline to an obviously intoxicated driver and/or assisting an obviously intoxicated driver in pumping the gasoline into his vehicle. Viewed in the light most favorable to the plaintiffs, we conclude that the evidence in the record establishes prima facie cases of negligence and negligent entrustment. We offer no opinion concerning the ultimate resolution of this case, as the plaintiffs still bear the burden at trial of proving the other elements of negligence. Based upon the foregoing analysis, we conclude that the trial court erred in granting summary judgment in favor of the defendants on the plaintiffs' claims of negligence and negligent entrustment. Consequently, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

Costs of this appeal are taxed to the appellant, East Tennessee Pioneer Oil Company d/b/a Exxon Convenience Store, or its sureties, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE

---

[8] The Court of Appeals also affirmed the trial court's grant of summary judgment regarding the plaintiffs' claim of negligence per se. The plaintiffs have not argued this issue before this Court. Accordingly, the judgment of the intermediate court is affirmed as to this claim.