IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 17, 2006

# BRIAN N. KNIGHT, M. CHANCE DUDLEY, KRISTY DUDLEY, AND D. CHAD DUDLEY
## v.
# FLANARY & SONS TRUCKING, INC., PATRICK RAY STURM, J. B. HUNT TRANSPORT, INC., AND SEAN M. HANSEN

**An Appeal from the Circuit Court for Madison County**
**No. C 02-398-111      Roger Page, Judge**

---

**No. W2005-01412-COA-R3-CV - Filed June 29, 2006**

---

This is an automobile accident case. The plaintiffs were traveling on the interstate in a pickup truck pulling a U-Haul trailer. The individual defendants were each driving a commercial eighteen-wheeler truck and were following the plaintiffs, one behind the other. The plaintiffs came upon road construction and slowed to a stop. The defendant driving the truck immediately behind the plaintiffs could not stop; he swerved to the right and hit the plaintiffs' U-Haul. The defendant driving the second truck behind the plaintiffs was also unable to stop. He struck both the U-Haul and the pickup truck, causing both vehicles to catch fire and resulting in serious personal injuries to the plaintiffs. The plaintiffs sued the drivers of both of the eighteen-wheeler trucks and their employers for damages resulting from the accident. The plaintiffs' claim against the driver of the second truck and his employer was settled. The plaintiffs then proceeded to trial against the driver of the first truck and his employer. After a jury trial, the jury returned a verdict finding in favor of the plaintiffs, concluding that the defendant driving the first truck was 25% at fault for the accident. The defendants appeal, arguing that no material evidence supports the jury's finding that their negligence caused the plaintiffs' damages. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

C. Mark Donahoe, Jackson, Tennessee, for the appellants, Sean M. Hansen and J. B. Hunt Transport, Inc.

Jeffrey P. Boyd, Jackson, Tennessee, and James A. Morris, Jr., Beaumont, Texas, for the appellees, Brian N. Knight, M. Chance Dudley, Kristy Dudley, and D. Chad Dudley.

**OPINION**

This action arises out of an automobile accident that occurred at approximately 4:00 p.m. on August 7, 2002, in Madison County, Tennessee. Plaintiffs/Appellees, Brian Knight (backseat), M. Chance Dudley (driver), and Chad Dudley (passenger seat), all brothers (collectively, "Plaintiffs"), were riding together in a pickup truck pulling a U-Haul trailer. They were driving westbound on Interstate 40 in the far right lane. Immediately behind them, Defendant/Appellant Sean M. Hansen ("Hansen") was driving an eighteen-wheeler truck owned by Defendant/Appellant J. B. Hunt Transport, Inc. ("Hunt Transport"). Traveling behind Hansen, defendant Patrick Ray Sturm ("Sturm") was driving an eighteen-wheeler truck owned by Defendant Flanary & Sons Trucking ("Flanary Trucking").

At some point, as the parties neared a construction zone, traffic slowed on the highway, and the Plaintiffs' vehicle slowed and almost stopped behind another eighteen-wheeler truck in a line of traffic. Hansen, immediately behind the Plaintiffs, was unable to stop his truck in time to avoid hitting the Plaintiffs and veered to the right into the emergency lane to avoid a direct collision. Hansen's truck missed the Plaintiffs' pickup truck but struck the top right rear corner of the Plaintiffs' U-Haul. This collision did not dislodge the U-Haul. After Hansen swerved to the right, Sturm, immediately behind Hansen, was unable to stop in time to avoid a collision with the Plaintiffs. He drove his truck into the U-Haul, destroying it, and then hit the Plaintiffs' pickup truck, forcing it into the eighteen-wheeler truck in front of them. The Plaintiffs' truck caught on fire, and the Plaintiffs suffered serious personal injuries as a result of the collision.

On November 7, 2002, the Plaintiffs filed the instant lawsuit against Flanary Trucking, Sturm, Hunt Transport, and Hansen for damages arising out of the accident. The complaint alleged that all of the defendants were negligent. Prior to trial, the Plaintiffs settled their claims against Flanary Trucking and Sturm. They proceeded to trial by jury against Hunt Transport and Hansen (collectively, "Hansen Defendants"). A trial in the matter was conducted on February 23, 24, and 25, 2005. All of the parties involved testified, either by deposition or in person, and two accident reconstructionists testified as well.

Chance Dudley, the driver of the Plaintiffs' truck, testified that he and his brothers were traveling along the interstate from Nashville to Jackson in the outside lane, engaged in conversation as they rode. They noticed signs posted which said that there would be construction work on the interstate for the next ten miles. Signs indicating a speed limit change were also posted and patrol cars were present, with lights on, alerting drivers of the impending construction zone. Chance said that an eighteen-wheeler truck was stopped immediately in front of him, with a line of vehicles stopped ahead of it. When he saw a patrol officer and noticed the line of traffic, Chance and his brothers stopped conversing, and he slowed the pickup truck to a complete stop. Once stopped, he and his brothers had begun talking again when Hansen hit their U-Haul trailer from behind. Chance remarked that Hansen's truck "came by so fast" along his right side just inches away from their pickup truck, and that debris flew by as it passed. Though the impact of Hansen's vehicle did not "twist the truck," Chance said, "It jarred us. . . . We knew we'd been hit." Immediately thereafter,

Chance testified, the second truck hit them and he was knocked unconscious. When he regained consciousness, he was beside the road unable to move, and the truck was on fire. When asked how much time passed between the impact of the first truck and the second truck, Chance replied, "It was quick, real quick. . . . [W]e still had our head[s] looking in that direction [of the first truck] whenever the second truck hit us."

Hansen testified at trial, and portions of his deposition were also offered into evidence. Hansen said that he had followed the Plaintiffs' U-Haul trailer from just outside Nashville until the accident. Hansen saw the first sign warning of road construction for the next ten miles and noted a reduced speed limit from seventy (70) miles per hour down to sixty (60) miles per hour. He testified that his truck was in tenth gear (the highest gear) going about sixty-two (62) miles per hour when he noticed the U-Haul's brake lights. He said he could not see anything in front of the U-Haul trailer. Hansen applied his brakes briefly and downshifted as he veered to the right. He testified that "it happened so quick that I realized I had to do something evasive quick. I've always been taught if there's an emergency, you've messed up, go to the right. . . . Go off the road. Don't kill nobody." Hansen told a patrol officer at the scene that he was going about fifty-eight (58) or fifty-nine (59) miles per hour when he hit the U-Haul, but at trial he denied going that fast. He said that, at the time of the impact, he had the truck in fifth gear but was not applying his brakes. Hansen acknowledged that he was at fault and that the Plaintiffs did nothing wrong.

Portions of Sturm's deposition were read into evidence at trial. Sturm testified that, prior to the accident, he noticed the signs on the side of the road warning of impending interstate construction. He said that he was following about 210 feet behind the truck driven by Hansen. Sturm testified that he had been maintaining an even speed behind Hansen, and that he could not see around Hansen's truck to know what was happening ahead. He heard on the CB radio that the traffic in the right lane was slowing down. When he saw Hansen apply his brakes, he had already started to change to the left-hand lane, which was clear for about a half of a mile. Sturm saw Hansen swerve and hit the U-Haul on the right. The U-Haul then broke off and spun into the left lane in front of Sturm. Sturm said that he applied his brakes and veered to the left in an attempt to avoid hitting the U-Haul but was unable to. When Sturm struck the U-Haul it exploded, flew apart, and debris flew onto his truck. Sturm was knocked out and woke up in the grassy area of the median. When asked whether the Plaintiffs had done anything wrong, Sturm replied that he was not in a position to see the Plaintiffs, so he did not know what they were doing until after Hansen swerved around them.

Jerry Elston ("Elston"), a lieutenant with the Madison County Sheriff's Department, testified at trial as an accident reconstructionist. From his review of the record, Elston noted that Hansen testified in his deposition that he was traveling about fifty-eight (58) miles per hour when he struck the Plaintiffs' U-Haul trailer. Elston said that, when Hansen struck the U-Haul, the U-Haul dug into the side of Hansen's truck, and the impact caused a flexing motion into the U-Haul, pressing it down and causing it to dig into the pavement. He stated that the impact of Hansen's truck caused the U-Haul to move, "but it didn't move much."

Elston testified that, under Tennessee law, an eighteen-wheel truck driver has a duty to keep his truck a safe distance from the vehicle in front of it, and to apply his brakes so that he can stop before making impact with the vehicle in front of him. Elston concluded that Hansen failed to apply his brakes in a timely manner to keep from hitting the Plaintiffs' vehicle, failed to control the speed of his vehicle, and failed to be attentive while operating his vehicle, all in violation of Tennessee law. Elston further concluded that both Hansen and Sturm bore some responsibility in causing the accident, and remarked that "[t]he whole series of events began with [Hansen]." Elston observed that, if Hansen had timely applied his brakes and stopped a safe distance behind the Plaintiffs, Sturm would not have hit them. He noted that there was no evidence indicating that, had Hansen timely applied his brakes, Sturm would not have also done so. He noted Sturm's testimony that he could not see beyond Hansen's truck in front of him until it veered out of the way. Elston further surmised that, if Hansen had stopped properly behind the Plaintiffs' truck and Sturm had hit Hansen's truck, Hansen's truck would have absorbed the impact much better than the Plaintiffs' pickup truck, because Hansen's truck weighed much more than the Plaintiffs' pickup truck and more than Sturm's eighteen-wheeler truck as well. Therefore, any damages sustained by the Plaintiffs would have been far less than what actually occurred.

Sergeant Barry Waldrop ("Waldrop") of the Tennessee Highway Patrol testified as well. Waldrop visited the scene of the accident after it happened and testified as an accident reconstructionist for the Hansen Defendants. Like Elston, Waldrop opined that Hansen failed to apply his brakes in a timely manner, and that he failed to perceive and react in such a manner as to avoid a collision. Waldrop testified that he had previously investigated accidents in which more than one vehicle received a citation for violating the law, including cases in which citations were written as to a vehicle that did not actually make contact with the victim but, nonetheless, violated the law and contributed to the sequence of events.

The Tennessee highway patrol officer who prepared the traffic report after the accident, Tim Massengill ("Massengill"), also testified. Massengill said that the construction zone began at the 91st mile marker, and that troopers were positioned on the median at the 87th and 86th mile markers with their lights on to alert oncoming motorists of the slowed traffic. The accident occurred at the 86th mile marker. Massengill testified that, under Tennessee law, drivers have a duty to timely apply their brakes if someone in front of them is stopping, a duty not to drive at an excessive speed for the road conditions, and a duty not to follow another vehicle too closely.

On March 2, 2005, the jury returned a verdict in favor of the Plaintiffs and found that they had suffered damages totaling $1,510,000. The jury apportioned the fault for the accident 25% to Hunt Transport and Hansen and 75% to Flanary Trucking and Sturm, resulting in a judgment of $377,500 against Hunt Transport and Hansen. The trial court entered a judgment on the verdict. Subsequently, the Hansen Defendants filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. On May 26, 2005, the trial court entered an order denying the motion. From that order, the Hansen Defendants now appeal.

On appeal, the Hansen Defendants argue that the evidence was insufficient to show that Hansen's conduct was the proximate cause or the cause-in-fact of the accident or of the Plaintiffs' injuries. Rather, they claim, the undisputed evidence showed that the intervening negligent conduct of Sturm was the sole proximate cause and the cause-in-fact of the Plaintiffs' damages. The Hansen Defendants assert that they did not have a duty to control the conduct of Sturm, a third party, and that their duty of care to the Plaintiffs ended when Hansen avoided the collision that ultimately caused the Plaintiffs' injuries.[1]

Our review of a judgment on a jury verdict is limited. "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." T.R.A.P. 13(d). Under the "material evidence" standard, the appellate court is required to take the strongest legitimate view of the evidence favoring the verdict, discard all contrary evidence, assume the truth of all of the evidence supporting the verdict, and set aside the jury verdict only when there is no material evidence to support it. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000). We may not reweigh the evidence or consider where the preponderance lies. We must review the record to determine whether *any* material evidence supporting the verdict is present. *Alley v. McLain's Inc. Lumber & Constr.*, 182 S.W.3d 312, 315-16 (Tenn. Ct. App. 2005); *Bronson v. Umphries*, 138 S.W.3d 844, 850 (Tenn. Ct. App. 2003). Thus, if the record contains any material evidence supporting the jury's allocation of 25% of the fault to the Hanson Defendants, we must affirm the jury's verdict.

In arguing that causation was not established at trial, the Hansen Defendants do not claim that Hansen was not negligent. Rather, they assert that, because the truck driven by Hansen did not actually strike the Plaintiffs' truck, they cannot be held legally responsible for the injuries caused by the collision between the Plaintiffs and Sturm's truck. In response, the Plaintiffs maintain that Hansen's negligence was a contributing factor in causing their injuries, because Hansen's negligent conduct in veering off the road created an emergency situation that left Sturm with little time to avoid colliding with the Plaintiffs. They contend that the Hansen defendants cannot escape liability simply because Hansen's eighteen-wheeler truck did not make physical contact with the Plaintiffs' pickup truck.

Indeed, as a part of their negligence claim, the Plaintiffs were required to establish, among other things, that the Hansen defendants were a cause-in-fact and a proximate cause of the Plaintiffs' injuries. *See Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005). Causation in fact and proximate causation are distinct concepts. A defendant's conduct is a cause-in-fact of an injury when the injury would not have occurred "but for" the defendant's conduct. *See West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 552-53 (Tenn. 2005). Once "but for" causation has been established, it must be determined whether the defendant's conduct was a proximate cause of the injury. *Hale v. Ostrow*,

---

[1] In their appellate brief, the Hansen Defendants' "Statement of the Issues" includes whether the trial court erred in failing to direct a verdict in their favor, and whether the trial court erred in failing to alter or amend the judgment to fit the proof at trial or, alternatively, for a new trial. These issues, however, were not addressed in the argument section of the brief and, therefore, are considered to be waived. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).

166 S.W.3d 713, 718-19 (Tenn. 2005). Proximate causation focuses on whether the law will extend responsibility for the conduct in question. *West*, 172 S.W.3d at 553 (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). "Cause in fact and proximate cause are 'ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.'" *Hale*, 166 S.W.3d at 718 (quoting *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994)).

We first address whether there is material evidence to show that Hansen's negligence was a cause-in-fact, or a "but for" cause, of the Plaintiffs' injuries, taking the strongest legitimate view of the evidence in favor of such a finding and discarding all contrary evidence. Under this standard, the evidence at trial showed that the Plaintiffs were slowed or stopped on Interstate 40 behind a line of stopped traffic because of road construction, and that well in advance of the accident site, signs and state troopers with lights flashing alerted drivers to the impending construction. Despite the construction warnings and the fact that the Plaintiffs had stopped, Hansen was unable to stop his truck in time to avoid striking the Plaintiffs. The evidence showed that Sturm was not able to see the Plaintiffs' truck in front of Hansen until after Hansen veered off the road. Elston, the Plaintiffs' expert, testified that, had Hansen followed behind the Plaintiffs at a safe distance and maintained a proper lookout, Hansen would have been able to stop his truck properly without running off the road. Hansen told Massengill, the patrol officer, that he passed the Plaintiffs' truck at a speed of 58 to 59 miles per hour, and he testified that he did not apply his brakes as he swerved around the Plaintiffs. The jury could have inferred from this evidence that, if Hansen had applied his brakes, Sturm would have seen the danger ahead and applied his brakes long before he did. If he had done so, he would have either avoided the accident or decreased the severity of the consequences of it. Thus, "but for" Hansen's negligent conduct, the accident would not have occurred, or the impact would have been significantly lessened.

The Hansen Defendants insist that Hansen's conduct cannot be considered as the cause-in-fact of the Plaintiffs' injuries, because Hansen's impact with the Plaintiffs did not injure them, and the Plaintiffs would not have been injured at all had Sturm not been negligent in the operation of his truck. However, in order to establish "but for" causation, "[i]t is not necessary that the defendants' act be the *sole* cause of the plaintiff's injury, only that it be *a* cause." *Hale*, 166 S.W.3d at 718. Elston testified that both Hansen and Sturm bore some responsibility for the accident and the Plaintiffs' injuries, and he specifically concluded that Hansen's negligence began the "whole series of events." Elston's conclusion is supported by other evidence in the record. Based on our review of the record, we find material evidence to support the jury's conclusion that Hansen's negligence was a "but for" cause of the accident and of the Plaintiffs' resulting injuries.

We next address whether material evidence in the record supports the jury's conclusion that Hansen's negligence was a proximate cause of the Plaintiffs' injuries. In order to establish proximate cause, a plaintiff must show that (1) the tortfeasor's conduct was a "substantial factor" in bringing about the harm of which the Plaintiffs complain; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated

by a person of ordinary intelligence and prudence. *West*, 172 S.W.3d at 553 (quotations omitted). "There can be more than one proximate cause of an injury." *Stokes v. Leung*, 651 S.W.2d 704, 708 (Tenn. Ct. App. 1982); *see also Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 871 (Tenn. Ct. App. 1985). "There is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991).

For the same reasons that Hansen's negligence was a cause-in-fact of the Plaintiffs' injuries, we find that Hansen's conduct was a "substantial factor" in bringing about the Plaintiffs' injuries. Had Hansen operated his truck in a manner that was not negligent, the entire accident may have been avoided, or at least the injuries suffered by the Plaintiffs likely would not have been so severe. Hansen argues that the accident could not have been foreseen by a person of reasonable intelligence. We disagree. Clearly it was foreseeable that a serious accident could result from Hansen's negligence in failing to maintain a proper distance behind the Plaintiffs, failing to observe that the Plaintiffs had slowed or stopped on the interstate, and suddenly swerving to the emergency lane at almost 60 miles per hour.

Finally, we address the Hansen Defendants' argument that they did not owe a duty to the Plaintiffs after Hansen avoided colliding with them. They argue that Hansen had no duty to control Sturm's operation of the Flanary truck. Duty is the legal obligation owed by the defendant to the plaintiff to use a "reasonable person" standard of care in order to protect the plaintiff from unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). The scope of the defendant's duty is governed by the foreseeability of the risk of harm involved. *Tompkins v. Annie's Nannies, Inc.*, 59 S.W.3d 669, 673 (Tenn. Ct. App. 2000). The Hansen Defendants correctly point out that "persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others." *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992). However, the Hansen Defendants were not held liable for injuries caused by Sturm's conduct; rather, they were held liable as a result of Hansen's own negligence and the consequences resulting therefrom. A duty arises when it is shown that the resulting injury was a reasonably foreseeable consequence of the defendant's negligence. *Puckett v. Roberson*, 183 S.W.3d 643, 649 (Tenn. Ct. App. 2005). As noted above, the injuries suffered by the Plaintiffs fell within the range of the risks created by Hansen's negligence. Therefore, Hansen had a duty of care to the Plaintiffs, and that duty was breached. *See Lancaster v. Montesi*, 390 S.W.2d 217, 220 (Tenn. 1965).

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellants J. B. Hunt Transport, Inc., and Sean M. Hansen, and their surety, for which execution may issue, if necessary.

 

 

 

 

                                     _____
                                        HOLLY M. KIRBY, JUDGE