# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 12, 2007 Session

## TRENT WATROUS, Individually, and as the surviving spouse and next of kin of VALERIE WATROUS v. JACK L. JOHNSON, ET AL.

### Direct Appeal from the Circuit Court for Chester County
### No. 04-4545     Roy B. Morgan, Jr., Judge

### No. W2007-00814-COA-R3-CV - Filed November 21, 2007

The trial court awarded summary judgment in favor of Defendants on Plaintiff's claim of negligent entrustment.  We reverse and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. and JOHN EVERETT WILLIAMS, SP. J., joined.

Dale Conder, Jr. And Todd D. Siroky, Jackson, Tennessee, for the appellant, Trent Watrous.

John A. Peebles, Memphis, Tennessee, for the appellees, Leon Johnson and wife, Betty Johnson.

### OPINION

This negligent entrustment action arises from a tragic automobile accident.  In November 2004, Valerie Watrous (Ms. Watrous) was killed when she was struck by a 1995 Chrysler Concorde ("the Concorde") operated by Defendant Jack L. Johnson (Jack) as she walked along White Avenue in Henderson.  Mr. Johnson was subsequently indicted for aggravated vehicular homicide, leaving the scene of an accident with injuries, and filing a false police report.  He pled guilty to reckless homicide in violation of Tennessee Code Annotated § 39-13-215 and was sentenced to twelve years in the Department of Corrections.

In November 2005, Ms. Watrous' husband, Trent Watrous (Mr. Watrous), filed a wrongful death action against Jack and Jack's parents, Leon Johnson (Mr. Johnson) and Betty Johnson (Ms. Johnson; collectively, "the Johnsons"), in the Circuit Court for Chester County.  In his complaint, Mr. Watrous alleged that Jack was under the influence of alcohol and/or drugs at the time of the 2004 accident; that the Johnsons were aware that Jack had a drug and alcohol abuse problem and of Jack's history of driving under the influence; and that the Johnsons either purchased or provided the

funds for the vehicle Jack was driving when the accident occurred. Mr. Watrous asserted claims of wrongful death and the negligent and intentional infliction of emotional distress against Jack, and a claim of negligent entrustment against the Johnsons. In his claim against the Johnsons, Mr. Watrous alleged the Johnsons were liable under the theory of negligent entrustment because they "placed him [Jack] in an automobile and made it possible for him to operate a car" with knowledge that he posed a substantial risk to others. Mr. Watrous further alleged the Johnsons paid the insurance premiums on the vehicle and, despite knowledge of the risks posed by Jack, "enabled him to drive the car by purchasing insurance for him at the lowest limits legally permitted." Mr. Watrous prayed for wrongful death damages in the amount of $2,000,000 and for punitive damages in the amount of $1,000,000.

The Johnsons answered in February 2006 and denied liability under a theory of negligent entrustment. The Johnsons denied purchasing, paying for, or providing an automobile for Jack, although they admitted that they assisted in the payment of insurance premiums. The Johnsons further admitted that they were aware the Jack had a history of drug and alcohol use, as well as a history of driving under the influence. Following discovery in the matter, in January 2007 the Johnsons moved for summary judgment. In their statement of undisputed facts, the Johnsons asserted that Jack was forty-six years of age; that the Concorde operated by Jack was neither owned by nor registered to them; that the Concorde was gifted to Jack by a friend, Jean King (Ms. King); that they had no control over the use of the vehicle; and that they only assisted Jack with the insurance premiums and occasional gas and minor maintenance for the vehicle.

Following a hearing on the matter, the trial court determined that there were no disputed issues of material fact and that the Johnsons were entitled to a judgment as a matter of law. Finding no just reason for delay, in March 2007 the trial court entered final judgment in the Johnsons favor pursuant to rule 54.02 of the Tennessee Rules of Civil Procedure. Mr. Watrous filed a timely notice of appeal to this Court. In light *of West v. East Tennessee Pioneer Oil Co. d/b/a Exxon Convenience Store*, 172 S.W.3d 545 (Tenn. 2005), we reverse summary judgment and remand for further proceedings.

### Issues Presented

The issues raised for our review, as presented by Mr. Watrous, are:

(1)    The trial court incorrectly found that no genuine issues of material fact exist regarding whether Defendants Betty and Leon Johnson entrusted the car to Defendant Jack Johnson.

(2)    The trial court erred in applying the wrong standard with regard to whether a person exercises control over a chattel under well-established negligent entrustment law.

### *Standard of Review*

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

### *Analysis*

Tennessee recognizes the tort of negligent entrustment as defined in the Restatement (Second) of Torts. *West v. East Tenn. Pioneer Oil Co. d/b/a Exxon Convenience Store*, 172 S.W.3d 545, 554 (Tenn. 2005)(citations omitted). Section 390 of the Restatement provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965).

This section "applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration." *Id.* Comment a. Section 390 is a "special application" of section 308 of the Restatement. *Id.* Comment b. Section 308, moreover, is the rule applicable to "permitting improper persons to use things or engage in activities." It states:

> It is negligence to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965). Thus, to succeed on a claim of negligent entrustment, a plaintiff must demonstrate that "a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another." *West*, 172 S.W.3d at 554

In *West v. East Tennessee Pioneer Oil Co.*, the Tennessee Supreme Court abrogated the rule formulated fifty years earlier in *Brown v. Harkleroad*, where we held that a father could not be liable for negligent entrustment of a vehicle to his son, despite knowledge that the son was a "habitually drunk and reckless driver," because the father had relinquished control of the vehicle by furnishing it as a gift. *Id.* at 554-555 (citing *Brown v. Harkleroad*, 287 S.W.2d 92 (Tenn. Ct. Appl 1955)). The *West* court observed that, while liability under a theory of vicarious liability is predicated upon a "supplier's right to control the chattel at the time the entrustee misuses it," liability under a theory of negligent entrustment "is founded upon the supplier's direct negligence in entrusting the chattel to an incompetent user." *Id.* at 555 (citations omitted). In *West*, the supreme court reversed summary judgment in favor of a defendant which undisputedly did not supply the vehicle causing the injury in that case, but which supplied the fuel necessary to operate the vehicle despite clear evidence that the operator of the vehicle was intoxicated. *Id.* With the principles enunciated in *West* in mind, we turn to the case now before us.

We begin our analysis of this case by noting that we are not insensitive to the rather unusual circumstances giving rise to this negligent entrustment claim. At the time of the accident that killed Ms. Watrous, Jack Johnson was forty-six years of age, had been unemployed for approximately four years, and was living with his parents rent-free. Additionally, Jack had no income other than student loans, did not have a bank account, and was financially dependent upon the Johnsons. Ms. Johnson paid Jack's expenses from the Johnsons' bank accounts, and does not dispute that amounts paid on Jack's behalf exceeded the amount of his student loan. The Johnsons, moreover, do not dispute that they were aware that Jack had a history of drug and alcohol abuse, as well as a history of operating under the influence

The parties, however, dispute whether the Johnsons purchased or had a right to control the vehicle that Jack was operating when he struck and killed Ms. Watrous. The Johnsons maintain that the Concorde driven by Jack was never purchased or owned by either Mr. or Ms. Johnson, but was given to Jack by Ms. King and was registered solely in Jack's name. The Johnsons concede, however, that they paid for the title, tax, registration, license fees, and insurance for the Concorde. Additionally, despite Ms. King's affidavit stating that the vehicle was a gift to Jack, a notation on the title recites a purchase price of $200. Further, although the Johnsons contend they did not use the vehicle or have authority to allow or prohibit others from using it, they acknowledge contributing to the maintenance of the vehicle and gas costs. Additionally, it is undisputed that Mr. Johnson paid off a $500 title loan taken by Jack for which the vehicle served as collateral, although the Johnsons assert Jack repaid his father with student loan funds. Mr. Johnson, however, also took a security interest in the vehicle as collateral for an additional loan to Jack.

-4-

We agree with Mr. Watrous that a genuine issue of material fact exists in this case with respect to whether the Johnsons purchased the Concorde for Jack. Despite the Johnsons' and Ms. King's assertions that the Concorde was a gift, the title indicates a purchase price of $200. The resolution of this question is, we believe, largely a matter of witness credibility. The resolution of matters based on credibility determinations are properly within the province of the jury, and are not matters to be resolved by summary judgment. *Helderman v. Smolin*, 179 S.W.3d 493, 505 (Tenn. Ct. App. 2005).

Additionally, under *West*, the determination of whether the Johnsons negligently entrusted the Concorde to Jack does not end with a determination of whether they initially purchased the vehicle from Ms. King. Like the defendant in *West*, in this case the Johnsons clearly provided and controlled the means by which Jack was able to operate the vehicle. Regardless of whether the Johnsons purchased the vehicle from Ms. King and subsequently entrusted it to Jack, Mr. Watrous has presented evidence that the Johnsons repaid a loan Jack had taken against the title to the vehicle the day before it became due. The Johnsons do not dispute that, had they not paid off the title loan, the Concorde would nave been repossessed by Tennessee Title Loans. Thus, as Mr. Watrous asserts, the Johnsons essentially "re-purchased" the Concorde from Tennessee Title Loans and provided it to Jack. Further, it is undisputed that Jack had no access to funds other than his student loans and those provided by the Johnsons, that the Johnsons provided Jack with the funds to repay loans that had become due, and that the Johnsons paid virtually all of Jack's expenses. The Johnsons do not dispute that they had knowledge of Jack's history of driving under the influence, or that Ms. Johnson provided Jack with a check in the amount of $100 to be cashed at a gas station the night on which Jack struck and killed Ms. Watrous.

The Johnsons rely on *Nichols v. Atnip*, 844 S.W.2d 655 (Tenn. Ct. App. 1992), for the proposition that their purchase of gasoline and provision of maintenance and insurance for the vehicle does not support a claim for negligent entrustment. In *Nichols v. Atnip*, we held that the defendants were not liable for negligent entrustment where they neither supplied nor entrusted their adult son with the vehicle causing injury in that case. *Nichols*, 844 S.W.2d at 660. In *Nichols*, we noted, that the defendants' son had

> purchased the automobile with his own funds and held title in his own name. They only items the Atnips provided to their son were tires, occasional gas money, and payment of some of his insurance premiums. There is no proof of any direct causal relationship between these items and the . . . accident or that Robert Atnip, Jr. would not have been able to drive his car had his parents not helped him with some of the expenses.

*Id.*

Unlike *Nichols v. Atnip*, in this case, Mr. Watrous has presented a prima facie case that, like the seller of the fuel in *West*, the Johnsons supplied Jack with the essential means by which he was able to operate the vehicle causing injury. Further, unlike the defendant in *Nicholas v. Atnip*, the

Johnsons essentially repurchased the Concorde for Jack when they repaid the title loan on his behalf. Whether the Johnsons' actions were the proximate cause of the injury to Ms. Watrous is a question of fact for the jury.

Like the court in *West*, viewing the evidence in a light most favorable to the Plaintiff, we must conclude that Mr. Watrous has presented sufficient evidence to establish a prima facie claim of negligent entrustment. However, like the *West* court, we "offer no opinion concerning the ultimate resolution of this case." *See West*, 172 S.W.3d at 556. However, we cannot say that the Johnsons are entitled to a judgment as a matter of law in light of the evidence presented by Mr. Watrous.

### *Holding*

In light of the foregoing, the trial court's award of summary judgment to the Johnsons is reversed. This matter is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the Appellees, Leon Johnson and Betty Johnson.

_____
DAVID R. FARMER, JUDGE